BULWINKLE & CO. v. CRAMER & BLOHME.

1. Where defendants in their own name sold corn at a sound price, took a note therefor in their own names and realized thereon and the corn proved to be unsound, in action by the plaintiffs (who had paid this note to an innocent endorsee) to recover their damages, parol testimony is inadmissible in behalf of defendants to show that they were acting, in this sale, as agents for third persons.

2. The rule that parol testimony is inadmissible to vary or explain written instruments, and the exceptions to that rule, fully considered and applied.

3. C signed and delivered to B a written paper as follows: "May 17th.

Sold B 5,000 bu. mixed sacked corn @ 71½ c. Schooner shipment payable on arrival. No wharfage." *Held,* a complete contract, although signed by only one of the parties, and that parol testimony was inadmissible to show that C was acting only as agent.

Before KERSHAW, J., Charleston, November, 1886.

The opinion states the case.

*Messrs. Hayne & Ficken,* for appellant.

*Messrs. Simons & Cappelmann,* contra.

October 14, 1887.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was an action against the defendants, "Cramer & Blohme," for $1,138.70, damages sustained upon a lot of shelled corn in sacks, purchased from them by the plaintiffs on May 17, 1884. The following writing was offered as the written contract of the parties:

"May 17th.   Sold H. Bulwinkle & Co.—
    "5,000 bu. mixed sacked corn @ 71½ c.
    "1,000  "      "        "      "   @ 80½ c.
"Schooner shipment payable on arrival. No wharfage.
              "(Signed)              CRAMER & BLOHME."

At the time the purchase was made the corn was not in the city, but soon after, about the last of May or first of June, the schooner "May Williams" reached Charleston with the corn. Upon its arrival in the harbor, the plaintiffs were notified of the fact. Mr. Haesloop, one of the plaintiffs, went down to the vessel and finding about 150 sacks out, examined the corn in two or three of them, and found that "it seemed good." On June 4, before all the corn was out of the vessel, the defendants presented their account for the corn, $4,400.45. The odd cents were paid and the plaintiffs gave their note as follows:

    "$4,400.              CHARLESTON, S. C., June 4, 1884.
"Forty days after date, we promise to pay to the order of Cramer & Blohme, forty-four hundred dollars at any city bank. Value received. Due July 19–22.
                    "H. BULWINKLE & CO."

Endorsed as follows:

Pay A. Bequest without recourse.

CRAMER & BLOHME,<br>A. BEQUEST.

Written across the face, "Paid July 22, 1884."

A few days after the note was given, in removing the corn it was discovered that some of the sacks were damaged. Immediate notice was given to the defendants, but as they refused to correct the matter or to have anything to do with it, the corn was "surveyed" by two gentlemen, at the request of the "Merchants' Exchange," and 1,470 sacks were found to contain corn in "a damp blue-eyed and musty condition." This damaged corn was sold at auction and brought less than the price of good corn of the same kind, by $1,138.70. In the meantime, and before the note fell due, the defendants transferred it, and as the defence of unsoundness of the corn could not be made to it, in the hands of an innocent holder before due, the plaintiffs paid it and brought this action for the damages sustained.

The cause came on for trial before Judge Kershaw and a jury. A witness, one of the defendants, was asked whether they (the defendants) contracted in their individual capacity, or in what capacity. The plaintiffs objected to the question, claiming that parol testimony could not be offered to alter the written contract. The judge admitted the parol evidence, saying: "I do not regard this paper, which is a mere memorandum of contract taken down at the time, as precluding testimony as to the conversation between the parties, which might in any way throw light on the contract they were making. If these parties knew from any source at the time that the paper was made, that they were actually dealing with the defendants as agents, I think it can be shown as part of the *res gestae*," &c. The testimony being admitted, the jury, under the charge of the judge, found for the defendants. The plaintiffs appeal upon the following exceptions:

"1. That his honor committed error in ruling that the paper or contract sued on was a mere memorandum of contract, and did not preclude testimony as to conversations between the parties which might, in any way throw light on the contract or the nature of the contract they were making. And that if the

plaintiffs knew from any source, at the time that paper was made, that they were dealing with the defendants as agents, it could be shown as part of the *res gestae.*

"2. Because his honor ruled that if in this case there was a clear understanding between the parties that defendants were acting as agents, such understanding was not excluded by that paper.

"3. Because his honor admitted parol evidence on behalf of defendants, after objection thereto, as to conversations between the parties tending to throw light on the contract, or nature of the contract they were making.

"4. Because his honor admitted parol testimony on behalf of defendants, tending to show that defendants were dealing as agents and not as principals in signing the written contract sued on by plaintiffs.

"5. Because his honor admitted parol testimony on behalf of defendants, tending to show in what character defendants were contracting, whether as agents or principals, when they signed the contract or writing sued on and put in evidence by plaintiffs.

"6. Because his honor erred in instructing the jury as follows : 'If the jury find that the defendants, or either of them, signed the written contract offered in evidence by the plaintiffs, they are personally bound by said contract, unless it was distinctly understood by both parties, that the defendants were not to be personally liable for defects in the article purchased.'"

We agree with the Circuit Judge that in this State as to personal property, the rule of law is, that "sound price requires sound property," and the contract for the corn must be read as if these words were added "corn warranted to be sound." A part of the corn turned out to be "unsound," and it would seem that the plaintiffs are entitled to redress on the warranty, unless they, in some way, waived their rights. Something was said in the case about the plaintiffs having accepted the corn for themselves after an examination, but as there is no reference to that subject in the exceptions, the matter, of course, is not now before us.

As we understand it, the sole question in the case is, as to who is liable—whether the defendants, who sold the corn, signed the agreement, and took the note of plaintiffs and realized upon it in

their own name, had the right at the trial, to introduce parol testimony tending to show that they were not acting as principals, but as agents of Robert Turner & Son, of Baltimore, and the contract of plaintiffs having been made with Turner & Son through them, they are not liable individually. The question as to the admissibility of the evidence, seems to have been considered in two aspects : First, whether the paper offered as the agreement was such a contract in writing as to be within the rule which excludes parol testimony, and if so: Second, whether the judge erred in charging the jury, "that the defendants were not liable if it was distinctly understood by both parties, that the defendants were not to be personally liable for defects in the article sold."

All the authorities agree that as a general and most inflexible rule of evidence, "Whenever written instruments are appointed, either by the requirements of the law or by the compact of parties, to be the depositories and memorials of truth, any other evidence is excluded from being used, either as a substitute for such instruments or to contradict or alter them. This is a matter both of principle and policy." *Starkie on Evidence*, 648. This seems very plain, but the application of the rule is not always free from difficulty. In the infinite combination of circumstances, cases arise, which seem exceptions, but, when clearly examined, are found not to fall within the principle. As for example, it may happen that the written instrument does not purport to cover the whole field of contract, and is not intended to be the "depository" of the whole agreement, but only one branch of it. In such case, the whole contract may be proved by parol without touching the principle—the object being not to add to or alter the written instrument, but to show the whole agreement, of which the writing is only a part. *Kaphan* v. *Ryan* (16 *S. C.*, 360), is an example of this class, where the court were "not called on to give construction to the note and mortgage, but to determine from the evidence, for what purpose they (as executed) were to be used," &c. Here the writing covers the whole field—stating who are the parties and what the consideration and the price, in condensed form, but with exhaustive particularity.

Sometimes the "written instrument" does not state specifically

the consideration, as where a note says generally "for value received." There is a class of such cases, where the consideration may be enquired into; and in that way matter may get in by parol, "which does not necessarily tend to change the terms of the note, although by showing the true consideration upon which it was given, it may control the recovery upon the note." See *McGrath & Byrum* v. *Barnes* (13 *S. C.*, 332), where the court reviewed our cases upon the subject, and the former Chief Justice (Willard) endeavored to reconcile them, on the distinction here indicated. In that case it was held that, "When an executor gave his promissory note for the payment of money, which was expressed to be the amount due by his testator's estate for medical services rendered, most of which during last illness, parol evidence of a contemporaneous agreement, that the note was to be paid only upon a certain condition (that the probate judge would pass the account) is incompetent." In the case before us there cannot be the slightest doubt that the consideration was as stated in the instrument.

There is no doubt that a mere receipt, although in writing, may be explained by parol; but that goes on the ground that a receipt does not necessarily import a contract. As was stated in the case of *Heath* v. *Steele* (9 *S. C.*, 92), "In itself a receipt does not express the terms of any contract or writing of the minds of the parties, between whom it passes, but merely evidences, by way of admission, the fact stated in it." See *Moffatt* v. *Hardin*, 22 *S. C.*; 1 *Greenleaf*, section 305.

But assuming that this case does not come within any of the seeming exceptions above indicated, it is urged that the paper was too informal and *ex parte* to amount to a contract, but must be considered as a "mere memorandum of a contract," and therefore, not such "a written instrument" as to come within the rule as to the exclusion of parol evidence. Most assuredly a simple bill of parcels is not a contract, for the very good reason that it lacks the essential element of agreement, being only the 'statement of a fact—a memorandum—"a note to help the memory"; as, for instance, the bill for the price of the corn rendered in this case was a mere memorandum. But a contract is a promise from one to another, either made in fact or created by the law,

to do or to refrain from doing some lawful thing. *Bishop on Contracts*, section 1. There is no particular form required, the only requirement being, that it must contain the contract of the parties, and be definite and free from ambiguity. We can well understand how, in the hurry of business, parties would substitute condensed forms for regularly drawn out covenants or agreements. The defendants were offering corn for sale, to come by a vessel, the plaintiffs agreed to purchase a lot, and the defendants committed the agreement to writing thus : "May 17. Sold to H. Bulwinkle & Co. (* * * corn, &c.) Schooner shipment, payable on arrival. (Signed) Cramer & Blohme." Why was that not a complete contract ? It is said the plaintiffs did not sign it. The whole case shows that it was not *ex parte*, but expressed the contract of both parties. We think it is not unusual in a certain class of agreements, to be signed only by one party ; as in the case of an ordinary note, the terms of which are binding upon both parties. Suppose the defendants had offered the corn for sale at public auction, and upon a lot being purchased by the plaintiffs at a certain price, the defendants had made upon their sale-book the same entry precisely as they made in this case, "Sold, &c., to Bulwinkle & Co.," would they not be liable upon it as their contract ? The research of the plaintiffs' attorney enabled him to furnish the court with references to several cases, which seem to conclude this.

In *Meyer* v. *Everth* (4 *Camp.*, 22), the action was on a contract in these words: "50 hogsheads of Hambro's sugar loaves at 155 s., free on board of a British ship. Acceptance at 70 days." Lord Ellenborough held that it was a contract, and refused to admit parol testimony, tending to show that when the sugar was purchased a sample was exhibited, saying, "When the sale note is silent as to the sample, I cannot permit it to be incorporated into the contract. This would amount to an admission of parol evidence to contradict a written document," &c.

In *Powell* v. *Edmunds* (12 *East.*, 10), the action was on a sale note in these words : "April, 1806. I agree to become the purchaser of lot the first (timber trees) at £700 and agree to fulfil the conditions of sale. (Signed) A. Edmunds." At the trial an effort was made to show, by parol testimony, a warrant

as to quantity by the auctioneer, but the evidence was rejected, the court saying: "There is no doubt that the parol evidence was properly rejected. The purchaser ought to have had it reduced into writing at the time, if the representation then made as to the quantity swayed him to bid for the lot. If the parol testimony were admissible in this case, I know of no instance where a party may not by parol testimony superadd any term to a written agreemens, which would be setting aside all written contracts, and rendering them of no effect," &c.

In *Smith* v. *Jeffryes* (15 *Mees. & W.*, 560), the terms were, "I hereby agree to sell Mr. Smith, of Tanner Hill Deptford, sixty tons of Ware potatoes, at F5 per ton, and for which he has given me a bill for F250 for three months, and is to give F50 cash on Friday next. (Signed) Samuel Jeffryes." It appeared that in the neighborhood three qualities of potatoes were known as Wares, and the effort was to show by parol that the contract was for a particular kind of Wares. Held, "that the evidence ought not to have been received. It went to vary and limit the contract between the parties."

In *Greaves* v. *Ashlin* (3 *Camp.*, 426), the words were, "Sold to John Greaves 50 quarters of oats, at 45 s. 6 d. per quarter, out of 175 quarters. (Signed) I. Stevenson, for I. Ashlin." The defendant attempted to prove that his agent, Stevenson, had verbally made it a condition of sale that the plaintiff should take away the oats immediately, and had abated 6 d. per quarter of the price originally offered, in expectation of his agreeing to do so. The court held that "it was not competent to the defendant to give such evidence, as it materially varied the contract, which had been reduced into writing." In each of the two last cases cited, the paper was signed only by one of the contracting parties, and the action was brought by the party who had not signed it. See also *McClanaghan* v. *Hine*, 2 *Strob.*, 122, and *Gibson* v. *Watts*, 1 *McCord Ch.*, 490.

We think the paper proved in this case, was a contract in writing of both parties, within the rule as to the exclusion of parol evidence.

But it is insisted that while this may be so, as to what may be called the terms of the paper—the quality of the article, con-

sideration, time of payment, &c., yet parol testimony was admissible, tending to show that the defendants, Cramer & Blohme, in selling the corn—committing the agreement to writing—taking the note and realizing upon it in their own name—were acting, not as the papers represented, but as agents of a house in Baltimore, and that the plaintiffs contracted with said house, through Cramer & Blohme, as their agents. Is not the signature to a contract in writing, showing who made it and in what character, a part, and a very important part, of that contract? We are unable to see any good reason, why this part should not be protected from alteration or addition, as well as any other part of the contract in writing. It seems to us that, when the defendants signed the contract in their own names, that became a part of it, and could not be altered by parol, so as to add to the signature "as agents of Robert Turner & Son, of Baltimore." "A person contracting as agent will be personally liable, whether he is known to be an agent or not, in all cases where he makes the contract in his own same. * * * If an agent selling goods as bought of him the agent, he would be personally liable for a failure to deliver the goods." *Story Agency*, 269. See also, section 219; *Benj. Sales*, section 219; *Higgins* v. *Senior*, 8 *Mees. & W.*, 834; *Nash* v. *Towne*, 5 *Wall.*, 703, and *Jones* v. *Littledale*, 6 *Adol. & E.*, 486, in which last case cited Lord Chief Justice Denman said: "There is no doubt that evidence is admissible on behalf of one of the contracting parties, to show that the other was agent only, though contracting in his own name, and so fix the real principal; but it is clear that if the agent contracts in such a form as to make himself personally responsible, he cannot afterwards, whether his principal were or were not known at the time of the contract, relieve himself from that responsibility. In this case there is no contract signed by the sellers, so as to satisfy the statute of frauds until the invoice, by which the defendants represent themselves to be the sellers; and we think, they are conclusively bound by that representation. Their object in so representing was, as appeared by the evidence of custom, to secure the passing of the money through their hands, and to prevent its being paid to their principals, but in so doing they have made themselves responsible," &c.

In the case from Wallace, Mr. Justice Clifford said : "Parol evidence can never be admitted for the purpose of exonerating an agent, who has entered into a written contract in which he appears as principal, even though he should propose to show, if allowed, that he disclosed his agency and mentioned the name of his principal at the time the contract was executed. Where a simple contract other than a bill or note is made by an agent, the principal whom he represents may in general maintain an action upon it in his own name, and parol evidence is admissible, although the contract is in writing, to show that the person named in the contract was an agent, and that he was acting for his principal. Such evidence, says Baron Parke, does not deny that the contract binds those whom on its face it purports to bind, but shows that it also binds another, and that principle has been fully adopted by this court."—Citing numerous authorities.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the cause remanded to the Circuit Court for a new trial.