ROE v. SCHWEITZER.

No. 3285.    Decided October 18, 1919.    (184 Pac. 938.)

1.  TRIAL—OFFER OF PROOF STANDS IN SAME POSITION AS PLEADING. An offer of proof stands in the same position as a pleading, and if it is in any sense contradictory it will be construed when presented against him who relies upon it. (Page 210.)

2.  EVIDENCE—EXTRINSIC PROOF INADMISSIBLE TO DISCHARGE AGENT FROM PERSONAL LIABILITY. In an action to recover from an officer of a gold mining company $200 paid to him for stock, for which he receipted individually and without designation as such officer, extrinsic proof that he acted in an official capacity was not admissible to discharge him from liability. (Page 212.)

Appeal from District Court, Third District, Salt Lake County; *J. Louis Brown,* Judge.

Action by J. E. Roe against Thea Schweitzer. From judgment for plaintiff, defendant appeals.

AFFIRMED.

*King, Straup, Nibley & Leatherwood,* of Salt Lake City, for appellant.

*Olson & Lewis,* of Salt Lake City, for respondent.

STEPHENS, District Judge.

In this case the respondent brought an action against the appellant in the district court of the Third judicial district for Salt Lake county, Utah, to recover $200, alleged to have been paid to the appellant for 200 shares of the capital stock of the Fine Gold Placer Mining Company. The assertion of the respondent was that the appellant had failed to deliver the stock upon demand after full payment of the $200. At the trial of the cause, the respondent introduced in evidence the following instrument:

"Plaintiff's Exhibit 1.
"December 15th, 1913.
"Sold to J. E. Roe two hundred shares Fine Gold Placer Mining Company's capital stock at 1 ($1.00) dollar per share, to be paid at the rate of $50.00 per month.
"Thea  Schweitzer.
"Dec. 15/13.  Recd. this date fifty dollars ($50.00).
Thea  Schweitzer.
"Jan. 15/14.  Recd. this date forty dollars ($40.00).
Thea  Schweitzer.
"Feb. 19/14.  Recd. this date sixty dollars ($60.00).
Thea  Schweitzer.
"July 18/14.  Recd. this date twenty-five ($25.00) dollars.
Thea  Schweitzer.
"Aug. 17/14.  Recd. this date twenty-five ($25.00) dollars.
Thea  Schweitzer."

Thereafter the respondent proved payment of the $200, and rested. The appellant then opened his case, testified that when Exhibit 1 was made out by the parties they had "considerable conversation," and was then asked the following question:

"Now state whether or not anything was said to you at that time by Mr. Roe relative to where or how he wanted this stock delivered; answer that 'Yes' or 'No.' "

To this question the respondent interposed the objection that it was irrelevant and immaterial, unless it sought to vary the terms of the written Exhibit 1, and that, if it did tend so to vary the terms of Exhibit 1, it was incompetent. The court,

treating the question as one calling for the utterance itself, as distinguished from the fact of utterance, sustained the objection. Thereafter the appellant, according to the practice of making a record for appeal by offering, after an adverse ruling, the proof claimed to be excluded by the ruling, made the following offers of proof (because of their importance to the point in this appeal they are quoted from appellant's abstract in extenso; the reference in the first offer to "the hundred shares of stock" relates to a point not material upon this appeal) :

"I offer to prove by this witness that at the time the memorandum introduced in evidence in this case was made and delivered to the plaintiff, that the plaintiff had prior negotiations with this defendant for the purchase of stock of the Fine Gold Mining Company, and that in the purchase of the stock—of the hundred shares of stock, I understood it is admitted he got that—he purchased it in the same way, and took a receipt from the defendant, and received his stock from the Fine Gold Placer Mining Company; that at the time and on the date on which this memorandum of agreement was drawn up and delivered, to wit, the fifteenth day of December, 1915, that the plaintiff specifically requested and demanded of the defendant in this case that he simply turn the money over to the company, make provision there for the delivery of the stock to the plaintiff when it should be paid for; and we further offer to prove by this witness that in compliance with that request and demand upon the part of the plaintiff, that the money, as it was paid in was promptly turned over to the treasurer—the treasurer of the Fine Gold Placer Mining Company —and was deposited in the bank by that company, and that the records of the company show that the money was received. We further offer to prove by this witness that after the receipt of the last payment the Fine Gold Placer Mining Company stood ready and willing at all times to deliver to the plaintiff 200 shares of stock; that all that was done with reference to depositing the money as it was paid into the company was simply to perfect title to the stock on the part of the defendant, and put it in a position to be delivered immediately to the plaintiff upon his presentation of the receipt, which was simply for the purpose of showing that in paying, and to show the Fine Gold Placer Mining Company that the delivery was to be made as indicated. We further offer to prove by this witness that this arrangement was consented to by the Fine Gold Placer Mining Company, and that they simply as a matter of accommodation, and at his request, were ready to deliver it to the plaintiff—the stock after it was paid

for. We further offer to prove by this witness that soon after the payment for this stock that the Fine Gold Placer Mining Company recognized, in. substance and effect, that the plaintiff was the owner and holder of 200 shares in addition to the 100 shares which he already had of the capital stock; that the plaintiff participated."

"I offer to prove by Dr. C. N. Ray, of this city, who, at the time of the transaction in question, was a resident physician of Bingham Canyon, Utah, that he was the secretary of the Fine Gold Placer Mining Company, and that immediately after the payment of the last money due under the memorandum of agreement, that he stood ready and willing to deliver to the plaintiff 200 shares of the capital stock of the Fine Gold Placer Mining Company in controversy in this action, and that at all times the stock was in readiness and condition to be delivered to the plaintiff upon his presenting the receipt for the full payment."

"I now offer to show by Mr. A. E. Custer, a witness now present in court, that he was the president of the Fine Gold Placer Mining Company, and that as such president he stood ready and willing as the executive officer, the head of the corporation known as the Fine Gold Mining Company, to deliver to Mr. Roe, the plaintiff in this action, the 200 shares of capital stock referred to in the memorandum of agreement in this action, at any time after the payment for the same by the plaintiff upon the presentation of the receipt of Mr. Schweitzer showing that the money had been paid; in other words, that the company, for and on behalf of Mr. Schweitzer, through Mr. Custer as its president, and Dr. C. N. Ray as its secretary, held and stood ready and willing to deliver to him the stock which he had requested from the defendant."

These offers being rejected by the court, the appellant rested, and the court then directed a verdict in favor of the respondent. To these rulings, and to the direction of a verdict, the appellant duly excepted, and upon such rulings and direction of verdict, as well as upon the denial of a motion for a new trial, he assigns error. It is the contention of the appellant that by the rulings of the trial court he was denied the right to show an agreement, extrinsic to Exhibit 1, relating to place of delivery of the stock sold, and that he had that right under the view that Exhibit 1 is an incomplete writing.

If the offers of proof made by the appellant could be said to concern an extrinsic agreement upon a place of delivery, a subject upon which Exhibit 1 is silent, it would be proper

and necessary here for the court to state the law relating to
extrinsic proof where writings are asserted to be incomplete;
that is, where it is contended that their "legal act" has not
by the parties been "reduced into a single memorial," so that
"all other utterances of the parties on that topic are legally
immaterial for the purpose of determining what are the terms
of their act." Wigmore on Evidence, vol. 4, section 2425.
But the offers of proof do not concern place of delivery.
Therefore any statement of the law upon the point just men-
tioned would be obiter here.

Examination of the offers of proof shows them to concern
not place of delivery, the subject upon which Exhibit 1 is
silent, but the capacity in which the appellant was acting at
the time of the execution of Exhibit 1. Upon this subject
Exhibit 1 is not silent. On the contrary, it expressly and
definitely, without even descriptio personæ, shows the appel-
lant to have signed in a personal, not a representative, capac-
ity. In substance and effect the offers are offers to prove that
the appellant was acting, at the time of the execution of Ex-
hibit 1, not as seller, but as agent to sell. That is, the proba-
tive effect of the testimony offered, had it been received, would
have been that of showing that, notwithstanding the fact that
the appellant signed Exhibit 1 in his personal capacity, he was
nevertheless in reality acting in a representative capacity, so
that the real seller was the Fine Gold Placer Mining Com-
pany, and the appellant only an agent thereof. The following
points would have been established if the proof offered had
been received: That the money paid to the appellant was
not to be retained by him, but was to be turned over to the
Fine Gold Placer Mining Company; that the money, as paid,
was in fact turned over to the treasurer of the Fine Gold
Placer Mining Company, and deposited in the bank by that
company; that it was credited to the respondent on the books
of the company; and that the Fine Gold Placer Mining Com-
pany stood ready, after the receipt of the last payment, to
deliver the stock to the respondent. Nothing except express
use of the terms "principal" as applied to the Fine Gold
Placer Mining Company, and "agent" as applied to the ap-

pellant, could characterize more clearly than these points offer to show it to have been known that the appellant was merely an agent to sell, not a seller in his own right. The Fine Gold Placer Mining Company was to get, and, according to the proof sought to be introduced, did get, the respondent's money. The respondent was to get the stock directly from the Fine Gold Placer Mining Company. If the appellant was seller in his own right, why not also retainer of the purchase money? If the Fine Gold Placer Mining Company was but bailee to hold for delivery, why also ultimate retainer of the purchase price? There is one phrase in the offers, "* * * that all that was done with reference to depositing the money as it was paid into the company was simply to perfect title to the stock on the part of the defendant (appellant) and put it in a position to be delivered immediately to the plaintiff upon his presentation of the receipt, which was simply for the purpose of showing that in paying, and to show the Fine Gold Placer Mining Company that the delivery was to be made as indicated" which might be taken as an offer of proof that the appellant was himself and in his own right purchasing from the Fine Gold Placer Mining Company, and then reselling the same stock to the respondent, and at the same price (itself an improbable construction of a business contract of sale); but that meaning is upset by the offer to show that the money as paid was credited to the respondent. If the appellant was purchaser in the first instance, the price paid would surely have been credited to him. There is a phrase in the offers, "in other words, that the company, for and on behalf of Mr. Schweitzer, * * * held and stood ready and willing to deliver to him (respondent) the stock which he had requested from the defendant," which, were it not for the plain contrary meaning of the balance of the proof offered, might be taken to indicate an agency in the Fine Gold Placer Mining Company, or that that company was a gratuitous bailee to hold the stock for delivery. And the phrase, "this arrangement was consented to by the Fine Gold Placer Mining Company, * * * and they, simply as a matter of accommodation and at his request, were ready to

deliver. to the plaintiff (respondent) the stock after it was paid for,'' might give rise, taken alone. to a similar inference. But from the standpoint of exactitude these are dangerous phrases. ''For and on behalf of'' is at least a mixed question of law and fact. And what was the scope of the ''arrangement'' to which there was ''consent''? The term ''arrangement'' is broad. It must be taken to include the ultimate payment to the Fine Gold Placer Mining Company of the purchase price, a point which seriously weakens the idea of proof of a gratuitous bailment. And in any event, allowing such phrases full face value, they do not overbalance the heavy counterweight of the rest of the proof offered upon the same subject. ''An offer must be judged exclusively by its specific contents regarded as a whole.'' Wigmore on Evidence, vol. 1, section 17b. And note that while three witnesses were offered here, they were all offered upon the same subject, so that in legal effect there is but one offer. An offer of proof stands, moreover, in the same position as a pleading. If it is in any sense contradictory it will be construed, when presented against him who relies upon it. There seems to the court, finally, nothing in the offers which, if received, would have substantiated the contention of the appellant, as argued under an analogy, that the situation was one where goods sold under a memorandum were by oral agreement to be taken by the seller to the place of business of a third party and there left for the buyer. It does not appear from these offers that the stock sold was in the possession of the seller (appellant), and by him actually taken to the place of business of the Fine Gold Placer Mining Company. On the contrary, it fairly appears from the offers that the stock always was in the possession of the Fine Gold Placer Mining Company. No mention is made of specific certificates being in the hands of the appellant. Indeed, certificates, as such, are not mentioned in the offers at all, though the word is once used in the amended answer referred to below.

If there were any doubt upon the face of the offers themselves that they would have had the effect of proving, not an extrinsic agreement concerning place of delivery, but that

the appellant was only an agent, not personally interested in the sale, that doubt would be completely dissolved by paragraphs I, II, and IV of appellant's amended answer,. wherein it is alleged as follows (the italics are the writer's) :

"I. That at the time said two hundred shares of the capital stock of the Fine Gold Placer Mining Company were sold to this plaintiff by defendant, and that *notwithstanding the fact that said memorandum of sale was signed by this defendant personally*, that it was understood by and between plaintiff and defendant that as payments were made for said stock that defendant would give plaintiff a receipt for the same, and that when the full amount was paid plaintiff would present his receipt to the Fine Gold Placer Mining Company, and receive his said two hundred shares of stock; and it was further agreed and understood, by and between plaintiff and defendant at the time said stock was purchased, that defendant would pay to the Fine Gold Placer Mining Company all money received by him from plaintiff as the same was paid; and defendant further alleges that plaintiff fully understood and agreed to present his receipt to said company, and receive said two hundred shares of stock as referred to in said receipt.

"II. Defendant further alleges that all payments received by him from plaintiff in payment for said stock to the full amount of $200 was promptly paid by defendant to the Fine Gold Placer Mining Company at the several times when said payments were received by the defendant from the plaintiff, and defendant further alleges that the plaintiff was at said times credited upon the, books of the Fine Gold Placer Mining Company with the several amounts so paid in to the full amount of $200, and that the plaintiff was further credited with stock upon the books of said company to the full amount of two hundred shares, which said stock was subject to plaintiff's order, and to be delivered to plaintiff upon the presentation of his receipt showing payment for the same."

"IV. *Defendant further alleges that he received no benefit or profit whatsoever as a result of the sale of said stock* to this plaintiff, and defendant is further informed and believes, and upon such information and belief alleges, that at all times since plaintiff paid for said stock he could have had a certificate for the same by presenting his receipt to the Fine Gold Placer Mining Company, as plaintiff agreed to do."

Note respecting this answer this point: That it does not say, ''notwithstanding the fact that said memorandum of sale *was left silent as to delivery* it was nevertheless understood

and agreed that delivery should be made at the place of business of the Fine Gold Placer Mining Company,'' or words to such effect; it says, ''notwithstanding the fact that said memorandum of sale was *signed by this defendant personally* that it was understood and agreed by and between plaintiff and defendant, * * *'' and thereafter it is alleged that the money was to be paid ultimately to the Fine Gold Placer Mining Company, that the stock was to be received from that company, that the money was so paid, that the defendant ''received no benefit or profit whatsoever as a result of the sale'' of the stock, and that the plaintiff (respondent) could have had a certificate by presenting his receipt to the Fine Gold Placer Mining Company. This seems to the court a clear case of pleading that, though the appellant signed in a personal capacity, he was only an agent. Therefore the proof offered must have been to that effect or at variance with the pleading. Note especially that the allegation that the defendant (appellant) ''received no benefit or profit whatsoever as a result of the sale'' of the stock is consistent with the allegation that the Fine Gold Placer Mining Company ultimately received the purchase money, and is consistent with the theory that that company, not the appellant, was the seller, and is inconsistent with the theory that the appellant was the seller, and the Fine Gold Placer Mining Company merely an agent, or bailee, to deliver.

From the conclusion thus compelled, that appellant's offers of proof concern, not place of delivery, but the capacity in which the appellant was acting at the time of the execution of Exhibit 1, it necessarily follows that the action of the trial court in rejecting the proof, directing a verdict, and denying the motion for a new trial was correct. The law is well settled that where an agent has signed a contract in a personal capacity—that is, executed it in a manner clearly indicating that the liability is his alone—extrinsic proof is not admissible to discharge him from liability upon it. If he personally is, in unambiguous terms, bound to fulfill, he must fulfill. *Higgins* v. *Senior*, 8 M. & W. 834; *Fisher* v. *Marsh*, 6 B. & S. 411, 416; *Cream City Glass Co.* v. *Fried-*

*lander,* 84 Wis. 53, 54 N. W. 28, 21 L. R. A. 135, 36 Am. St. Rep. 895; *Western Publishing House* v. *Murdick,* 4 S. D. 207, 56 N. W. 120, 21 L. R. A. 671; *Nash* v. *Towne,* 72 U. S. (5 Wall.) 689, 18 L. Ed. 527; *Bulwinkle & Co.* v. *Cramer and Blohme,* 27 S. C. 376, 3 S. E. 776, 13 Am. St. Rep. 645; *Rapid Safety Filter Co.* v. *Lautkin,* 167 N. Y. Supp. 376; Wigmore on Evidence, vol. 4, section 2438 (3); Jones Commentaries on Evidence, vol. 3, section 452. The doctrine of *Pym* v. *Campbell,* 6 El. & Bl. 369, and *Rogers* v. *Hadley,* 2 H. & C. 226, that it can be shown that a writing was not intended by the parties to have effect as a contract, is not here applicable.

It is unnecessary to comment upon the authorities cited by the appellant. They do not concern the rule stated above.

The judgment is AFFIRMED; costs to the respondent.

WEBER, J., being disqualified, did not participate herein.

CORFMAN, C. J., and FRICK, GIDEON, and THURMAN, JJ., concur.