## 11790

### FIRST NATIONAL BANK v. USSERY *ET AL.*

#### (128 S. E., 707)

EVIDENCE—ABSENCE OR FAILURE OF CONSIDERATION FOR NOTE SUED ON MATTER OF DEFENSE, WHICH MAY BE SHOWN BY PAROL, THOUGH NOT SHOWN ON FACE.—Under Civ. Code, 1922, Section 3679, absence or failure of consideration for note sued on, such as delivery to and sale by mortgagee of cotton covered by mortgage securing note without applying proceeds to payment of debt, is matter of defense, which may be shown by parol as against one not a holder in due course, though not shown on face of note.

Before HENRY, J., Barnwell, Fall Term, 1924.    Reversed and remanded.

Action by the First National Bank of Barnwell, S. C. against S. H. Ussery and another.    Judgment for plaintiff and defendants appeal.

*Messrs. Brown & Bush,* for appellant, cite:    *Collateral securing accommodation endorser:*    2 Hill 362; 2 Rich. Law 428; 59 S. C., 31.

*Messrs. Harley & Blatt,* for respondent, cite:    *Exceptions too general:*    Rule 5 Supreme Court, Sec. 6; 100 S. C., 47; 114 S. C., 332.    *Renewal discharges old notes:*    3 McCord 522; 2 Hill 483.    *Rights of creditor holding collateral:*    3 R. C. L., 1280; 21 R. C. L., 685; 116 Cal., 116; 47 P., 1007; 58 Am. S. R. 156.    *Prior agreements merged:* 96 S. C., 697.    *Parol evidence rule:*    123 S. C., 534; 91 S. C., 316; 114 S. E., 412; 108 S. C., 47; 85 S. E., 1002; 115 S. C., 381.

June 25, 1925.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The following statement appears in the record:

"This action was commenced by the service of summons and complaint in March, 1923, and was tried before Judge J. K. Henry, and a jury at the Fall term, 1924, Court of

Common Pleas for Barnwell County. The defendant S. H. Ussery was in default.

"The suit was upon a note in the sum of $1,250, dated September 30, 1922. The terms of the note are set out in the complaint the said note being introduced in evidence as plaintiff's Exhibit No. 1.

"The defendant W. C. Cook by his answer claims that he was an indorser on two notes given by the defendant S. H. Ussery to plaintiff during the year 1920, which said notes were secured by chattel mortgages covering certain crops and chattels, and that in the fall of 1920, the cotton covered by the chattel mortgages, which secured the original notes, was turned over to plaintiff to be held for better prices, sold, and applied to the indebtedness in question; that in the fall of 1920, the defendant Cook was induced to indorse a renewal note, being held to believe that the plaintiff was holding the cotton of the said S. H. Ussery, and, when sold, the proceeds would be applied to the extinguishment of this indebtedness, and that several renewal notes were indorsed by the defendant with the same understanding and agreement, until in the fall of 1922 defendant Cook learned that plaintiff had sold the Ussery cotton, and had not applied the same to the note or notes which this defendant had indorsed, and thereupon Cook refused to indorse any further renewals.

"The defendant Cook contends that, had the plaintiff applied the proceeds from the sale of the cotton to the extinguishment of the indebdtedness, which the mortgages were to secure, he would not have been called upon to pay anything on account of his indorsement."

Paragraphs 1 and 2 of the complaint are formal. Paragraphs 3, 4, and 5 are as follows:

"(3) That heretofore, to wit, at Barnwell, S. C., on April 12, 1922, the defendant S. H. Ussery made, executed, and delivered his certain promissory note in writing, whereby he agreed to pay to the order of the First National Bank of Barnwell, S. C., on October 1, 1922, the principal sum

of $1,250, with interest after maturity at the rate of 8 per cent. per annum, payable annually until paid, and in case of suit 10 per cent of the entire amount due as attorney's fee and at the same time the drawers, indorsers, and guarantees waived notice of protest and notice of nonpayment, demand, and protest of the said note.

"(4) That the defendant W. C. Cook, at the time of the execution of the said note, did indorse and guarantee payment of the note at its maturity date, for valuable consideration.

"(5) That the said note is long past due, and numerous demands have been made for payment, all of. which have been refused, and the plaintiff is now the lawful owner and holder of the said note, and there are no credits on the same by discount or otherwise."

The answer of the defendant W. C. Cook is as follows:

"For a first defense:

"(1) Admits the allegations of Paragraph 1 and 2 of plaintiff's complaint.

"(2) Admits that he indorsed the note referred to in Paragraph 3 of the plaintiff's complaint, but alleges that the same was one of a series of renewal notes given by the defendant S. H. Ussery and indorsed by this defendant, and going back to a certain note and chattel mortgage given by the defendant S. H. Ussery in the early part of the year 1920, and indorsed by this defendant, all of which is more specifically referred to in defendant's second defense herein.

"For a second defense:

"(1) Admits the allegations contained in Paragraph 1 and 2 of plaintiff's complaint.

"(2) Defendant alleges that during the early part of the year 1920 the defendant S. H. Ussery made, executed, and delivered unto the plaintiff his certain promissory note in writing in the sum of about $1,250, which said note was secured by a certain chattel mortgage given by the defendant S. H. Ussery, covering his crop of cotton, corn, etc., grown

upon the Ussery place during the year 1920, and also two head of stock. That the giving of this mortgage, as security to said note was the only reason that induced this defendant to indorse said note.

"(3) That there was made by the said S. H. Ussery, upon his farm during the year 1920, 11 bales of cotton, all covered by the mortgage hereinabove referred to. That said cotton was by the said S. H. Ussery turned over to the plaintiff herein, as this defendant is informed and believes, and the plaintiff held the greater portion of said cotton in a warehouse for a long period of time, and finally sold said cotton to the extinguishment of the chattel mortgage given as security to the note which this defendant had indorsed. That this defendant is informed and believes that the balance of said cotton was by the bank turned over to the said S. H. Ussery, and that same was allowed to be sold and the money used by the said Ussery, and not applied to the payment of the note which had been indorsed by this defendant, which said note, as above stated, was secured by a chattel mortgage over said crop.

"(4) That in addition to the cotton hereinabove referred to the said S. H. Ussery made considerable quantities of corn and other food stuff. That the two head of stock covered by said chattel mortgage were allowed to remain in the possession of the said S. H. Ussery, when they should have been levied upon by the plaintiff and sold in satisfaction of the mortgage herein referred to.

"(5) That, when the said note was due in the fall of 1920, this defendant was induced to indorse a renewal note, being led to believe that, the plaintiff was holding the cotton of the said S. H. Ussery, and when sold the same would be applied upon the original note indorsed by this defendant. That several renewal notes were indorsed by this defendant, with the same understanding and agreement, until in September, 1922, this defendant learned that plaintiff had sold the Ussery cotton, and had not applied the same to the note

which this defendant had indorsed, and thereupon this defendant refused to indorse any further renewals of said notes.

"(6) That, had the cotton in question been sold and the proceeds therefrom duly credited upon the original note, which this defendant had indorsed, and had the other crop and the stock been levied upon and sold, the proceeds from all of this would have more than extinguished the note upon which this defendant was indorser.

"Wherefore, having fully answered, defendant demands that the complaint be dismissed, with costs."

The following proceedings took place on the trial of the cause:

"Exhibits 2 and 3, offered in evidence by the defendant, are two chattel mortgages, one dated the 3d day of April, 1920, for $400, which covers certain personal property and a certain crop of cotton, corn, etc., which said mortgage is recorded in the office of the Clerk of Court for Barnwell County in Book 16, page 964, on the 9th day of April, 1920, and a further chattel mortgage dated the 26th day of July, 1920, for $850, covering certain chattels and a certain crop of cotton, corn, etc., recorded in Book 16, at page 64 on the —————— day of ————, 1920. Both chattel mortgages are given by S. H. Ussery to the First National Bank of Barnwell.

"Mr. Blatt: We offer in evidence note dated at Barnwell, S. C., April 12, 1922, payable to the order of the First National Bank of Barnwell, S. C., in the sum of $1,250, due October 1st, and signed by S. H. Ussery, and indorsed by W. C. Cook. (Note offered in evidence and marked as Exhibit No. 1, and is in the papers of the counsel for the plaintiff.)

"Plaintiff rests."

The following took place during the examination of the defendant W. C. Cook as a witness:

"Direct examination by Mr. Brown:

"Q. You are one of the defendants in this case? A. Yes, sir.

"Q. Where do you live? A. Pleasant Hill, about eight miles from Williston.

"Q. What relation is Mr. Ussery to you? A. Brother-in-law.

"Q. During 1920 were you called upon to do anything or to indorse for your brother-in-law to help him get money to run his crop? A. Yes, sir.

"Q. Did you actually indorse for him? A. Yes, sir.

"Q. In what amount? A. One for $850 and one for $400.

"Q. Did you make any condition with reference to the giving of a chattel mortgage over the property—

"Mr. Blatt: We object to any transaction that occurred prior to April, 1922. That agreement was put in writing, and no fraud has been alleged, and it absolutely bars any transaction prior to the date of the last renewal note.

"Mr. Brown: We want to prove that that note is one of a series of notes which this mortgage was given as security for. We say in our answer that in 1922 a note was given, and that that was one of a series of notes which was a renewal note, and leading back to 1920—

"The Court: In order to get in that proof you would have to allege that there was fraud in the transaction.

"Mr. Brown: Well, say the fall of 1920 the note or notes were due, and the bank says, 'All right; if you cannot pay, give us a renewal note; we have the cotton, and we will keep it.' A renewal note, say, was given six months—

"The Court: Do you allege an agreement with Mr. Walker of the bank here?

"Mr. Brown: Yes; but no fraud was enacted at that time. We allege that this is a renewal note. There has been but one loan, and that was for $1,250. Is it necessary for us to allege fraud in order to show that that is a part of the original transaction? The original note is not attached to his; it is a note like the one here.

"The Court: I hold that you must include whatever contract you had in the renewal within the note itself. I will not rule with you without authority.

"Mr. Brown: In 1920, in the spring, the defendants herein gave a note or notes in the aggregate of $1,250, which note or notes were secured by a crop or a chattel motgage or mortgages, covering certain farm products and other chattel property. We allege in our answer that by agreement the $1,250 notes were repeatedly renewed down to April 12, 1922, with the understanding and agreement between the bank and Cook, the indorser, that the bank was holding as security for the renewal note certain crops of cotton that came off of that place, and we further allege that in October, 1922, we ascertain that the bank had disposed of the cotton, and that we refused to execute further renewal notes, and we contend that it is not necessary to allege fraud, but that it is permissible for us to say that the April 12, 1922, transaction is a part and parcel of the serial transaction, and it goes back to 1920 in order to connect ourselves with the security which they held. It is plain to me that it does not take fraud to establish that.

"The Court: I will have to overrule you. My ruling is if there was an agreement it would have to be a part of the note, because it is a new contract, or you must allege fraud in order to get in your proof. One way or the other must be done.

"Mr. Brown: I ask to be allowed to amend so as to allege fraud or deceit.

"The Court: You cannot do that at this time.

"Mr. Brown: You rule I cannot go back of this transaction?

"The Court: I do so rule.

"Mr. Brown (continuing): Q. Did you indorse a note in 1920 for Mr. Ussery?

"The Court: Don't answer that.

"Mr. Brown (continuing): Is the note dated in 1922,

and which is sued on here, a renewal of the original notes dated in 1920, to the chattel mortgage given in evidence was to secure?

"Mr. Blatt: We object to anything occurring between these parties prior to April 12, 1922.

"The Court: Yes, sir; that closes up the contract.

"Mr. Brown (continuing): Q. How many times—when you renewed this note in April, 1922, what representations were made to you or what understanding was had between you and the bank as to what they were doing with the cotton covered by this note you were renewing?

"Mr. Blatt: We object on the ground that the note sets out the agreement between the parties.

"The Court: I sustain that.

"Mr. Brown: You hold that I cannot go into any of that?

"The Court: No, sir; you cannot go into anything prior to the note, unless it is contained in the face of the note. That is my ruling.

"Mr. Brown: Under your ruling we cannot go any further then.

"Mr. Blatt: Then we will move for the direction of a verdict in this case.

"The Court: I will have to order it. Write your verdict."

The exceptions are as follows:

"(1) That his Honor, the presiding Judge, erred in refusing to permit the defendant W. C. Cook to testify that the note sued upon was a renewal note for two notes of $850 and $400, respectively, dated in 1920, given by his codefendant Ussery to the plaintiff and indorsed by the said W. C. Cook, and that said original notes were secured by chattel mortgages covering certain crops of cotton.

"(2) That his Honor, the presiding Judge, erred in refusing to permit the defendant W. C. Cook to testimy that the plaintiff had in its possession the cotton covered by said mortgages at the time of the execution of the said renewal

note, and that the said plaintiff sold said cotton and failed and refused to apply the proceeds derived from the sale thereof to the payment of said note.

"(3) That his Honor, the presiding Judge, erred in ruling that the whole of the transaction or contract was included within the note itself.

"(4) Because his Honor, the presiding Judge, erred in holding that it was necessary for the defendant Cook to allege fraud on the part of the plaintiff in order to prove that said note was secured by a mortgage over certain cotton in the possession of the plaintiff, and that said cotton was sold by plaintiff and the proceeds derived therefrom not applied to the payment of the mortgage debt."

The practical question in the case is whether there was error on the part of his Honor, the Circuit Judge, in ruling:

"You cannot go into anything prior to the note, unless it is contained in the face of the note."

In other words, he ruled that the note contained the entire contract between the plaintiff and the defendant, and that its provisions could not be contradicted, varied or explained by oral testimony.

In the Code of Laws of South Carolina, Vol. 3, 1108, § 28, we find the following provision:

"Absence or failure of consideration is matter of defense as against any person not a holder in due course."

In order to show that the ruling was erroneous, it is only necessary to cite, further, the following cases: *McGrath v. Barnes,* 13 S. C., 328; 36 Am. Rep., 687. *Bulwinkle v. Cramer,* 27 S. C., 377; 3 S. E., 776; 13 Am. St. Rep., 645. *Stahnaker v. Tolbert,* 121 S. C., 437; 114 S. E., 412.

New trial.

MESSRS. JUSTICES WATTS, COTHRAN and MARION and MR. ACTING ASSOCIATE JUSTICE R. O. PURDY concur.