12302

GLADDEN v. KEISTLER

(140 S. E., 161)

1. CONTRACTS—CONTRACT NEED NOT ALWAYS BE SIGNED BY BOTH PARTIES, BUT MAY BE SUFFICIENT, IF SIGNED BY ONE AND ACCEPTED, AND ACTED ON BY OTHER.—It is not always necessary, to give validity to a contract, that it should be signed by both parties, but it may be sufficient if it is signed by one party and accepted, held, and acted on by the other.

2. EVIDENCE—MERE WRITTEN RECEIPT MAY BE EXPLAINED BY PAROL EVIDENCE, BUT CONTRACTUAL ELEMENTS OF INSTRUMENT ARE SUBJECT TO PAROL EVIDENCE RULE.—Since· a receipt does not necessarily import a contract, a mere written receipt may be explained by parol, but, where the writing, though in form of a receipt, also

embodies the elements of a contract, it is, so far as contractual, not open to variation or contradiction by parol, and mere fact that a contract as part of its terms acknowledges receipt of money or property does not render the entire writing a mere receipt, subject to be contradicted by parol evidence.

3. EVIDENCE—PAROL TESTIMONY IS ADMISSIBLE TO SHOW A DIFFERENT CONSIDERATION THAN EXPRESSED IN INSTRUMENT, UNLESS CONSIDERATION IS CONTRACTUAL.—Parol testimony is admissible to show a different consideration from that expressed in a written instrument, when it was intended as a mere recital, since this would not otherwise change the terms of the written agreement, but it is not admissible when the consideration is contractual, as in that event such testimony would alter the force and effect of the writing in other respects.

4. EVIDENCE—PAROL CONTEMPORANEOUS AGREEMENT TO GIVE ADDITIONAL CONSIDERATION HELD INADMISSIBLE TO VARY INSTRUMENT RECITING RECEIPT OF STOCK FOR SPECIFIED CONSIDERATION AND PROMISING TO DELIVER DEED.—Instrument reciting receipt by defendant of stock certificates, and stating the consideration therefor and the delivery of notes and checks in part payment of consideration, with "promises" to deliver sufficient deed for realty, constituting a part of the consideration, as soon as possible, *held* complete statement of the entire transaction, and parol testimony of defendant's contemporaneous oral agreement to give plaintiffs each one-third of proceeds of fire insurance policies then in litigation was inadmissible under the parol evidence rule.

5. EVIDENCE—PLAINTIFFS WHO PREPARED INSTRUMENT EVIDENCING CONTRACT COMPLETELY PERFORMED BY THEM HELD NOT ENTITLED TO SHOW CONTEMPORANEOUS PAROL AGREEMENT ON GROUND OF DEFENDANT'S FRAUD.—Where plaintiffs, at their own suggestion and for their own protection, prepared an instrument evidencing contract, completely performed by them, for transfer of stock certificates to defendant in exchange for money and property consideration, proof of defendant's contemporaneous parol agreement to pay additional consideration was not admissible on the ground that defendant practiced fraud on plaintiffs by inducing them, through making of the parol agreement which he never intended to perform, to enter into their written contract.

On validity of contract which is signed by one party only, see 6 R. C. L., 641; 4 R. C. L. Supp., 431.

As to admissibility of parol evidence to vary or explain the terms of a receipt, see 10 R. C. L., 1025; 2 R. C. L. Supp., 1142; 6 R. C. L. Supp., 635.

As to competency of parol evidence where statement as to consideration is of a contractual nature, see annotation in 12 A. L. R., 355; 10 R. C. L., 1044; 2 R. C. L. Supp., 1144; 4 R. C. L. Supp., 688; 5 R. C. L., 584; 6 R. C. L. Supp., 636.

6. EVIDENCE—PARTS OF AGREEMENT NOT ENTIRELY IN WRITING, PROPOSED TO BE PROVED BY PAROL, MUST NOT BE REPUGNANT TO WRITTEN PARTS.—Where writing does not constitute sole memorial of agreement, parts of the agreement proposed to be proved by parol must not be inconsistent with, or repugnant to, the intention of the parties, as shown by the written instrument.

7. APPEAL AND ERROR—APPELLATE COURT CANNOT CONSIDER WEIGHT OF EVIDENCE.—Supreme Court on appeal cannot consider the weight of the evidence.

Before SHIPP, J., Chester, November, 1923. Affirmed.

Separate actions by W. B. Gladden and C. B. Gladden against A. N. Keistler. From a judgment setting aside verdicts for plaintiffs and granting a new trial in each case, plaintiffs appeal.

*Messrs. Hemphill & Hemphill,* for appellants, cite: *Consideration either executory or executed:* 6 A. & Enc. L. (2nd), 673. *Consideration expressed in receipt executed:* 2 Hill, 404; 1 McC., 514; 72 S. C., 410; 119 S. C., 344. *Distinction between admissible and prohibited parol testimony in connection with written instruments:* 97 S. C., 278. *Admission of parol testimony:* 72 S. C., 362; 89 S. C., 73; 67 S. E., 149; 10 R. C. L., 1059. *Appellant had right to prove fraud without alleging it:* 22 S. C., 132; 17 S. E., 732; 3 S. C., 579; 52 S. E., 964; 38 S. C., 210; 67 S. E., 149; 89 S. E., 1040; 2 Bail., 118; 3 S. C., 577; 32 S. C., 171; 71 S. C., 146; Id., 150; 84 S. C., 41; 137 S. E., 684; 96 S. C., 241; 85 S. C., 131. *Where there is a charge of fraud in obtaining a deed of conveyance, parol testimony is admissible to contradict, vary, or explain it:* 68 S. C., 110; 96 S. E., 698; 133 S. E., 438. *In a case of fraud, the rules of evidence as to the terms of a contract are not strictly applied:* 104 S. C., 223. *"Fraud":* 96 S. E., 698. *"Estoppel":* 93 S. C., 190; 10 R. C. L., 688–698.

*Messrs. Gaston, Hamilton & Gaston,* for respondent, cite: *When consideration open to inquiry by parol evidence:* 113 S. C., 88; 10 R. C. L., 238; 119 S. C., 351; 97 S. C., 278; 104 S. C., 469. *Written contracts should not be controlled*

*by oral testimony:* 83 S. C., 204; 2 Strob. Eq., 154. *Acceptance of contract binds acceptor the same as if he had signed same:* 27 S. C., 376; 136 S. C., 389; 4 Des., 60; 21 So., 147; 79 Va., 387; 96 S. W., 813; 91 Ind., 315; 4 Gray, 186; 21 Barb. (N. Y.), 190; 1 Blackf. (Ind.), 352; 240 S. W., 478. *Parol testimony admissible in construction of written contract where it does not alter, vary, or contradict the writing:* 65 S. C., 139; 61 S. C., 169; 16 S. C., 360; 54 S. C., 343; 41 S. C., 162. *Agreement as to contractual consideration cannot be changed by parol evidence:* 97 S. C., 278; 49 S. C., 351; 84 S. C., 410; 83 S. C., 204; 82 S. C., 411; 81 S. C., 114; 79 S. C., 134; 46 S. C., 372–411; 72 S. C., 410. *Where parties to a contract have reduced their negotiations to writing, all the contemporaneous oral agreements pertaining to it are conclusively presumed to have been merged in the writing, and evidence of such oral agreement is inadmissible:* 135 S. E., 363.

October 31, 1927.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

The appeal in these cases was originally heard by the Court composed of Mr. Justice (now Chief Justice) Watts, Associate Justices Cothran and Marion, and Acting Associate Justices Purdy and Ramage, and a majority opinion was filed on January 4, 1927, reversing the lower Court. Subsequently, upon petition of the respondent a rehearing was granted, and the cases were argued at the June, 1927, term.

The two cases are identical in all respects except as to the names of the plaintiffs, and were tried together in the Circuit Court and heard together in this Court.

The plaintiffs alleged in their complaints that they sold and delivered to the defendant their respective one-third interests in the capital stock of the Keistler Company, a corporation; that the defendant agreed, in consideration of such transfer, to pay them $7,000 in cash or its equivalent, to

convey to them certain real estate, and to pay to each of them one-third, or an amount equivalent to one-third, of the net proceeds of certain fire insurance claims of the corporation then in litigation; that the defendant had paid them the $7,000, and had conveyed to them the real estate in accordance with the agreement; that the insurance litigation had been concluded; that the net proceeds recovered therein amounted to $4,229.72; and that the defendant had refused to pay to them their respective one-third portions thereof. Each plaintiff demanded judgment for such one-third portion, or $1,409.90, with interest.

The defendant by his answers alleged that the contract under which he purchased the plaintiffs' holdings in the Keistler Company was in writing; that he had fully complied with its terms; and that it did not provide for the payment by him to them of any part of the insurance proceeds.

The written instrument set up by the defendant is as follows:

"Received, Chester, S. C., June 3, 1921, of Messrs. W. B. and C. B. Gladden, their several stock certificates covering eighty (80) shares of the capital stock of the Keistler Company, also the certificates for the forty (40) shares of said stock still standing on the books of said company in the name of J. D. Bankhead, but owned by said gentlemen and myself in the proportion of one-third each, which said stocks, together with the two-thirds interest of the said Messrs. Gladden in the stock standing in the name of J. D. Bankhead, I have bought from them at and for the sum of seven ·thousand dollars ($7,000.00) and one-half of the five (5) contiguous lots owned by the Keistler Company at Great Falls, S. C. I have this day given to said Messrs. Gladden in settlement of this transaction my check for four thousand dollars ($4,000.00) and my two (2) notes in the sum of fifteen hundred dollars ($1,500.00) each, with interest from June 1, 1921, at the rate of eight per cent. per annum, and

payable one on July 1, 1921, and the other on August 1, 1921, and I hereby promise and agree that the Keistler Company shall convey by a good and sufficient deed to the said Messrs. W. B. and C. B. Gladden the one-half of our real estate above described just as soon as same can be surveyed and platted, which I agree to have done right away. Our real estate above described is made up of lots Nos. 4, 5, 6, 7, and 8 of the Mrs. S. M. Gladden property, as platted by Jas. McLarnon, C. E., in May, 1916, and the one-half thereof the Keistler Company is to convey to Messrs. W. B. and C. B. Gladden is the western half of said property, the dividing line to begin at the point on the front of said property so as to divide the frontage equally and to run to a point on the northeastern boundary of said property so as to divide the said property into two equal parts.

A. N. KEISTLER.

"In presence of R. B. Caldwell.

"R. H. Gladden."

At the trial of the cases this instrument was placed in evidence. Parol testimony for the plaintiffs was admitted tending to show that, prior to the execution of the writing, the plaintiffs and the defendant entered into an oral agreement whereby it was agreed that the plaintiffs would sell to the defendant their stock in the corporation for $7,000 cash, or its equivalent, the conveyance of certain real estate, and two-thirds of what might be realized from the insurance claims then in litigation. The plaintiffs also introduced testimony as to what took place in connection with the execution and delivery of the written instrument. This evidence tended to show that on the 3d day of June, 1921, the Gladdens and Keistler went to the Commercial Bank, of which R. B. Caldwell was president, and the Gladdens signed a transfer of their stock and delivered it to Keistler, and Keistler signed the written instrument, and a copy was delivered to W. B. Gladden, who was also acting for C. B.

Gladden. Caldwell, who seems to have given some assistance in the matter, testified as to what took place at that time:

"Mr. Banks Gladden, I think it was, asked me if I didn't think he ought to have some sort of a little paper, as he expressed it, with reference to the division of those lots they had there."

Later Caldwell went into his private office and dictated the instrument above set out, and brought it back into the room where Keistler and W. B. Gladden were; C. B. Gladden having left the room. To quote further from Caldwell's testimony:

"I knew about the suit they had pending for the insurance. I asked them what was to be done about the insurance. Mr. Banks Gladden, I think, was the one that answered me. He said, 'If we get that, it will be in money. We have an understanding that it is to be divided among us in accordance with our holdings in the Keistler Company.' I asked them if that was to be put in this paper I had drawn. * * * Mr. Banks Gladden said: 'Well, it doesn't make any difference; we all understand one another, and we have never had any trouble; if we get that, it will be in money, and it will be divided.'"

Mr. Caldwell further says that Keistler was present, "and then I laid this receipt on the table, and my recollection is that I asked Mr. Keistler if that was satisfactory to him. He said it was, and he read over this receipt and signed it. * * * Mr. Gladden just said he wanted some little paper with reference to this real estate, and, when I drew this paper, I set out the facts that had been mentioned, to show a consideration for Mr. Keistler to convey the lot." On cross-examination Caldwell stated that he knew about the insurance before he drew the paper, but that he did not put anything about it in the written contract, and said:

"I don't recall a single thing Mr. Keistler said; Mr. Keistler is not a man that talks much; I don't know that he

said anything at all; I don't recall. I certainly understood that he accepted Mr. Gladden's statement about the insurance."

The defendant duly objected to the parol testimony tending to show that he agreed to turn over to the plaintiffs a part of the insurance proceeds, upon the grounds that the parties had reduced the entire agreement to writing, and that such testimony tended to vary the terms of such written agreement and was incompetent, but the testimony was admitted over his objection. In his testimony he denied that he had made any such agreement. At the close of all the testimony, he renewed his objection through a motion for a directed verdict; the Court overruled the motion and submitted the cases to the jury, who found for each of the plaintiffs the amount claimed, without interest.

In due time the defendant made a motion for a new trial on the ground, as stated in his motion for a directed verdict, that the parol testimony objected to was erroneously admitted. The Court, after consideration, granted the motion by the following order:

"The above cases were tried before me and a jury (the two cases by agreement were tried together) at the last term of the Court of Common Pleas for Chester County, and verdicts were rendered in favor of each plaintiff. Motions for new trial in each case were made by defendant on the minutes of the Court, and were marked 'Heard,' and written arguments have been filed with me by each side. The main ground of the motion is that the Court erred in admitting parol testimony to impeach the written contract introduced in evidence in the case and error in refusing to strike out such parol testimony after the written instrument was introduced. The matter has given me much concern, and is not without difficulty. I have, after careful study and thought, reached the conclusion that I was in error in refusing to strike out the parol testimony that tended to con-

tradict and add to the written paper. It is true that it has been repeatedly held that the consideration of a written deed or contract may be inquired into, but in cases where the consideration is a mere recital. In the cases here the consideration referred to was more than a mere recital; it was contractual in its nature, and was executory in its nature. It was a paper in which the defendant acknowledged the receipt of the stock purchased, and agreed to pay for it in the express manner expressed in the paper.

"To allow parol testimony to show that, in addition to what the paper shows he agreed to pay for the stock, a part of which at least is executory, he agreed to pay something in addition, seems to me to be in violation of the rule that parol testimony cannot be introduced to vary the terms of a written instrument. I therefore deem it my duty to set the verdicts aside on account of this error of law on my part, and to grant the defendant a new trial in each of the cases, and it is so ordered."

Thereafter the plaintiffs appealed to this Court upon exceptions involving the question of the admissibility of the parol testimony in controversy.

It is suggested that the written instrument involved is signed by only one party, and is not a contract within the contemplation of the parol evidence rule.

It is not always necessary, in order to give validity to a contract, that it should be signed by both parties; it may be sufficient if it be signed by one party and accepted, held, and acted upon by the other. See *Bulwinkle v. Cramer*, 27 S. C., 376; 3 S. E., 776; 13 Am. St. Rep., 645.

In 6 R. C. L. at page 641, it is said:

"But the fact that one of the parties has signed the contract does not require that the other party should do likewise. A written contract, not required to be in writing, is valid if one of the parties signs it and the other acquiesces therein. Acceptance of a contract by assenting to its terms,

holding it and acting upon it, may be equivalent to a formal execution by one who did not sign it. * * * If a person accepts and adopts a written contract, even though it is not signed by him, he is deemed to have assented to its terms and conditions and to be bound by them."

See, also, *Hudson v. State,* 14 Ga. App., 490; 81 S. E., 362, and *Oliver v. U. S. F. & G. Co.,* 176 N. C., 598; 97 S. E., 490.

Again, it is said that the writing is merely a receipt, and may be explained or contradicted by parol testimony.

In *Heath v. Steele,* 9 S. C., 86, the Court said:

"In itself a receipt does not express the terms of any contract or uniting of the minds of the parties between whom it has passed, but merely evidences by way of admission the fact stated in it; consequently it is not governed by the rules that prescribe the effect of instruments adopted by parties as the special means of evidencing some compact or understanding had between them, but, like evidence, not enjoying any special privilege, it is capable of being contradicted or modified by other classes of evidences."

In that case, however, the writing was a receipt for money paid, and the quoted language shows by its terms that it did not contemplate a receipt contractual in its nature.

The reason for the rule is stated in *Bulwinkle v. Cramer, supra:*

"There is no doubt that a mere receipt, although in writing, may be explained by parol; but that goes on the ground that a receipt does not necessarily import a contract."

A writing in the form of a receipt, however, may import a contract, and as to such writings the general rule is well stated in 22 C. J., at page 1138, as follows:

"Where a writing, although in the form of a receipt, also embodies the elements of a contract, it is, in so far as it expresses the contract or is contractual in its nature, subject

to the same rules as any other contract, and is not open to variation or contradiction by parol; and, of course, the mere fact that a contract, as part of its terms, acknowledges the receipt of certain money or property, does not render the entire writing a mere receipt, subject to be contradicted by parol evidence."

See, also, *Harris v. Dinkins,* 4 Desaus., 60, where the Court refused to admit parol evidence to extend the meaning and operation of a receipt by showing that it was the intention of the parties to release their interests in certain real estate, where such intention did not appear on the face of the receipt itself.

In *Tuley v. Barton,* 79 Va., 387, the Court says (quoting syllabus):

"Receipts are either mere admissions of payments or delivery, or they may contain a contract to do something in relation to the thing delivered. So far as they are mere admissions of delivery, they are only *prima facie,* and may be contradicted by parol testimony, but, so far as they are evidence of a contract, they stand on the footing of other written contracts."

Unquestionably, a writing may be called, and may be in form, a receipt, and still be in nature and effect a contract, and to such writings the parol evidence rule applies. It cannot be successfully contended that the writing in the present case it not contractual in its nature.

Again, it is urged that the parol evidence was admissible for the purpose of showing a different consideration from that expressed in the writing. In *Gill v. Ruggles,* 97 S. C., 278; 81 S. E., 519, and 104 S. C., 461; 89 S. E., 503, this Court, as said in *Knighton v. Desportes Mercantile Co.,* 119 S. C., 340; 112 S. E., 343, distinctly draws the line of demarcation between admissible and prohibited parol testimony in so far as it relates to the con-

sideration expressed in written instruments. In the first decision in the *Ruggles case* the Court said:

"Parol testimony is admissible to show a different consideration from that expressed in a written instrument when it was intended as a mere recital, as this would not otherwise change the terms of the written agreement; but it is not admissible when the consideration is contractual, as in that event such testimony would alter the force and effect of the writing in other respects."

The appellants and the respondent agree that this is a correct statement of the law, but the appellants urge that the admission of the parol testimony in controversy would add only to the formal or "recital" part of the instrument, contending that all the contractual words in the writing are found after the words "I hereby promise," and that the admission of the testimony would not serve to change that portion of the instrument. We cannot agree with this contention. The first part of the instrument, that is, the part preceding the words "I hereby promise," contains what appears on its face to be a statement of the entire transaction; and, whatever may be said as to an executed consideration, certainly, if Keistler agreed to pay to each of the plaintiffs one-third of the insurance proceeds—an obligation to be performed after the execution of the writing— the parol testimony establishing his agreement to make such payment would vary and add to the obligations imposed upon him by the latter part of the instrument, that is, the part including and following the words, "I hereby promise," and would in effect superadd the requirement for such payment after those words. The admission of the parol testimony as to the insurance proceeds, therefore, would necessarily change the contractual portion of the writing, in contravention of the parol evidence rule.

In *McCracken v. Ansley,* 4 Strob., 1, the Court well said:

"The rule is, that a written contract, that is, the obligatory part of it, what the party undertook to do or perform, shall not be varied by parol evidence."

The following cases have been cited in support of the appellants' contention as to the admissibility of the parol testimony to vary the consideration: *Garrett v. Stuart,* 1 McCord, 514; *Curry v. Lyles,* 2 Hill, 404; *Whitman v. Corley,* 72 S. C., 410; 52 S. E., 49; *Knighton v. Desportes,* 119 S. C., 340; 112 S. E., 346.

An examination of these cases discloses that all of them have to do with deeds. On various grounds, such as, that the consideration expressed in a deed is not contractual, or does not express the promise of the parties (*Scott v. Wiggins,* 113 S. C., 88; 101 S. E., 113, *Knighton v. Desportes, supra*), or that the deed, in so far as it acknowledges payment of the consideration, is only a receipt (*Daniels v. Moses,* 12 S. C., 130), or that the consideration is one of those formulas which enter into almost every deed, and which are unnecessary to its validity and binding effect, and as to which it will not be supposed that the parties have expressed precisely what was intended (*Curry v. Lyles,* 2 Hill, 404), the Courts appear to have been more liberal in admitting parol testimony to vary or contradict the consideration expressed in deeds than in the case of some other forms of contracts. A particular application of the rule is found in cases where parol evidence is admitted to show a different consideration of the same nature expressed in the deed, for instance, where the deed expresses a certain valuable consideration, parol evidence is admitted to show a different valuable consideration, *Garrett v. Stuart, Whitman v. Corley, Knighton v. Desportes, supra.*

As to the writing involved in the present case, it cannot be said either that the consideration is not contractual, or that the writing is only a receipt, or that the consideration

is immaterial so that the Court would be justified in assuming that the parties may not have stated it precisely as intended. Therefore the cases cited are not in point and are not controlling.

The appellants also contend that the testimony in controversy is admissible to show a contemporaneous parol agreement between the parties, basing their contention upon the ground that the respondent practiced a fraud on them by inducing them, through the making of the parol agreement, which he never intended to perform, to enter into the written contract.

The record justifies no inference of fraud on the part of Keistler in procuring the written agreement. In fact, Keistler did not seek or procure the written agreement; apparently being entirely willing for the contract to rest in parol. As the contract was fully performed on the part of the appellants, there was no necessity for a writing. The writing was prepared entirely at the suggestion of the appellants, who seemed to think it necessary for their protection, and Keistler merely signed the paper which they had prepared and submitted to him.

Again, the appellants contend that the parol testimony in dispute is admissible to show that the parties did not constitute the writing as the sole memorial of their agreement and to show what was the entire contract between them.

In 22 C. J., 1283, it is said:

"Where a written instrument, executed pursuant to a prior verbal agreement or negotiation, does not express the entire agreement or understanding of the parties, the parol evidence rule does not apply to prevent the introduction of extrinsic evidence with reference to the matters not provided for in the writing."

The authorities are divided on the question as to how the incompleteness of the written agreement may be shown,

some cases holding that, in the absence of fraud or mistake, parol evidence can be admitted only when the contract or writing shows on its face that it does not express the entire agreement of the parties, and others holding that the omission of a portion of the agreement may be shown by parol. As to this point we express no opinion, but, in whatever way the fact that the writing does not express the entire contract is shown, it is true, as said in 22 C. J., at page 1290, that:

"The parts of the agreement proposed to be proved by parol must not be inconsistent with, or repugnant to, the intention of the parties as shown by the written instrument; for, to receive parol proof of a part not reduced to writing, which is directly repugnant to the intention of the parties as expressed in the written instrument, would contravene the rule that parol evidence cannot be received to contradict or vary the terms of a written agreement."

See, also, 10 R. C. L., 1030.

The following cases have been cited in support of appellant's contention: *Ashe v. Railway Co.,* 65 S. C., 134; 43 S. E., 393; *Chemical Co. v. Moore,* 61 S. C., 166; 39 S. E., 346; *Sloan v. Courtenay,* 54 S. C., 314; 32 S. E., 431; *Willis v. Hammond,* 41 S. C., 153; 19 S. E., 310; *Bulwinkle v. Cramer,* 27 S. C., 376; 3 S. E., 776; 13 Am. St. Rep., 645; *Moffatt v. Hardin,* 22 S. C., 9; *Kaphan v. Ryan,* 16 S. C., 352; *Knight v. Knotts,* 8 Rich., 35.

An examination of these cases will prove interesting.

In the *Ashe case,* the *Moore case,* the *Courtenay case,* and the *Hammond case, the fact that the writing involved did not constitute the entire contract was apparent from an examination of the writing itself,* and this fact differentiates these cases from the present case.

The *Ashe case* involved a contract between Ashe and the Railway Company for the hire of certain cars. The Court said:

"The written evidence of the contract being silent as to the time in which the money was to be paid, parol testimony was admissible to show fact, as it did not alter, vary or contradict the writing."

In the *Moore case* the Court said:

"It is quite clear that the contract in writing, set out as an exhibit to the complaint, does not contain all of the terms of the transaction between the parties; and hence if looked at alone, it would not afford plaintiff any cause of action against defendants. * * * The terms of that paper do not show, of itself, any such contract as could become the basis of a cause of action for any specified sum of money. * * * The testimony was competent in order to show the entire transaction between the parties."

In the *Courtenay case* the writing did not purport to contain all the terms of the contract, and parol evidence was admitted, *without objection,* to show the terms of the contract not specified in the written instrument. The trial Judge charged as follows:

"That if the jury find that the agreement was reduced to writing only in part, it was competent to prove the remainder thereof by parol testimony; but it was not competent by parol testimony to prove that the real contract was different from so much thereof as had been reduced to writing, except in a direct proceeding, having for its object the rescission of the supposed contract, and the restoration of the original status of the parties to the alleged agreement."

As the parol evidence relating to the contract was admitted without objection, it is evident that the exception referred only to that part of the charge in which it was said that "it was not competent by parol testimony to prove that the real contract was different from so much thereof as had been reduced to writing," etc., and the Supreme Court, recognizing the exact point involved, sustained the charge in this language:

"We see no error here, as the proposition there charged is in accordance with the well-settled rule that the terms of a written contract cannot be varied, explained or contradicted by parol evidence unless there is a direct proceeding for the reformation or rescission of the contract; and this is not such a proceeding."

In the *Hammond case* the writings showed on their face that they did not express the whole agreement, and the Court held that the way was thereby opened "to testimony showing the precedent arrangements of the parties."

In the *Cramer case* the Court *disallowed* parol testimony on the ground that "the writing covers the whole field."

The *Hardin case,* the *Ryan case,* and the *Knotts case* have to do with promissory notes secured in the first named two cases by mortgages—as written evidences of indebtedness.

The *Hardin case* and the *Ryan case* both refer for authority to the case of *McGrath & Byrum v. Barnes,* 13 S. C., 332; 36 Am. Rep., 687. In that case the Court, in the following language, furnished an excellent background for its later discussion:

"That promissory notes and other obligations for the payment of money absolutely are frequently given upon considerations of an expectant character, as upon contracts, calling for acts to be performed by the party to whom the note is given, and are put in an absolute form for the convenience of the parties, is a fact well known. When a party gives his note upon the promise of the payee to perform a certain act, and the payee fails to perform, it is reasonable that the transaction should be considered as a whole for the purpose of ascertaining what is due between the parties. * * * The question is whether such a defense to a promissory note is sanctioned by the principles of law and the adjudicated cases."

It then proceeded to review a number of earlier cases, affording an enlightening discussion of the application of

the parol evidence rule to the consideration of a promissory note, and settled upon the *Knotts case* as containing a correct statement of the law:

"*Knight v. Knotts,* 8 Rich., 35, finally settled the question by placing the defense upon the true ground, namely, as involving the consideration of the note. The verbal agreement accompanying the note was held to be the consideration of the note, the two constituting but one agreement, and when the contract failed to give support to the note the latter could not justify a recovery."

In line with this principle, parol evidence was admitted in the *Hardin case* and the *Ryan case* to show the whole agreement in which the notes originated and of which they constituted only parts. The reason underlying the greater latitude allowed in the case of promissory notes than in the case of some other forms of contracts is set forth in the quotation first above made from the *Barnes case,* but that reason does not extend generally to written contracts.

We find nothing, therefore, in the cases cited in support of appellants' contention to justify the admission of the parol testimony objected to in the present case.

A case, however, that is closely parallel to the present case is *Blackwell v. Faucett,* 117 S. C., 60; 108 S. E., 295. In that case it was attempted to be shown by parol evidence that a written contract for the sale of land included also a lot of shingles and cement on the premises. The testimony was disallowed, and Mr. Justice Cothran, speaking for the Court, made a very clear statement of the law:

"There is no more wholesome rule of law, in my opinion, than that announced in *Lagrone v. Timmerman,* 46 S. C., 411 [24 S. E., 290]:

" 'When the parties have reduced their contract to writing, the Court can only look to the terms in which the parties have expressed their intention in such writing.'

"And quoting from 1 Greenl. Ev., § 275:

" 'When parties have deliberately put their engagements into writing in such terms as import a legal obligation, without any uncertainty·as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing; and all oral testimony of a previous colloquium between the parties, or a conversation or declaration at the time when it was completed or afterwards, as it would tend in many instances to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected.'

" 'When a writing, upon its face, imports to be a complete expression of the whole agreement, and contains thereon all that is necessary to constitute a contract, it is presumed that the parties have introduced into it every material item and term, and parol evidence is not admissible to add another term to the agreement, although the writing contains nothing on the particular item to which the parol evidence is directed.'   16 R. C. L., 1030."

No language more pertinent to the present case can be found.   In the light of the 'principles enunciated, we ask ourselves these questions:   Have the parties "deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement?"   Does the writing, "upon its face, import to be a complete expression of the whole agreement?"   Does the writing contain upon its face "all that is necessary to constitute a contract?"   These questions can be answered only in the affirmative.   It follows that "it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertakings, was reduced to writing," and that "the parties have introduced into it (the writing) every material item and term," and hence

that "parol evidence is not admissible to add another term (regarding the fire insurance proceeds) to the agreement, although the writing contains nothing on the particular item (the fire insurance proceeds) to which the parol evidence is directed."

If the provision requiring the defendant to pay over to the plaintiffs a part of the insurance proceeds can be added by parol evidence to the clear contractual obligations of the writing, what would there be to prevent the introduction of parol testimony to add to the agreement any condition or obligation that might seem desirable to either of the parties?

As was well said by Mr. Justice Nott, in *McDowell v. Beckly,* 2 Mill. Const., 265:

"It is not only a sound and salutary rule of law, but it is equally a rule of common sense, that written contracts should not be controlled by oral testimony. The various conceptions of different minds on the same subject, the liability of all persons to forgetfulness, the influence of passion, prejudice, and interest, renders unwritten contracts, at all times, uncertain. But *litera scripta manet.* It cannot change with times or circumstances; and when a contract is reduced to writing, the law presumes that the writing contains the whole agreement."

After a careful examination of the entire record and the law applicable to the facts thereby disclosed, we find no grounds upon which the testimony may be held admissible. We may add that, in reaching our conclusion, we have given no consideration to the weight of the testimony —that is not a matter for this Court—but have confined ourselves strictly to the legal questions involving its admissibility.

The judgment of the Circuit Court in each of the said cases is affirmed, and both cases are remanded to that Court for a new trial in each of them in accordance with the order of Judge Shipp.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE and CARTER concur.

MR. JUSTICE COTHRAN (dissenting) : I am of opinion that the order of his Honor Judge Shipp for new trials in these cases was based upon an erroneous conception of the law, and should be reversed. I therefore dissent from the opposite conclusion announced in the opinion of Mr. Justice Stabler, for the reasons which follow.

These two cases, identical in all respects, were tried together on circuit, and were heard together in this Court.

Each is an action for the recovery of an amount equal to one-third of the proceeds of two policies of fire insurance, collected by the defendant. The policies were upon a stock of goods which belonged to the Keistler Company; it was destroyed by fire on January 26, 1921. See the case of *Keistler v. Ins. Co.*, 124 S. C., 32; 117 S. E., 70, the opinion in which was filed February 1, 1923. The net amount collected by the defendant as a result of that litigation was $4,229.72. The plaintiffs contend that, under the facts following, they are entitled to an amount equal to two-thirds of that sum, $1,409.90 each, with interest from the date of its collection by the defendant, May 4, 1923. The contest is whether, in a sale by the plaintiffs of their stock in the Keistler Company to the defendant, he agreed as a part of the consideration, in addition to other items, to pay them an amount equal to two-thirds of what might be realized on said policies.

The cases were tried before his Honor Judge Shipp and a jury, and resulted in verdicts in favor of the plaintiffs for the amounts claimed, without interest. Thereafter the defendant moved for new trials, which motions were granted by Judge Shipp, in an order which will be incorporated in the report of the case. From that order the plaintiffs have appealed.

The evidence tended to establish these facts: In May, 1921, the Keistler Company, a corporation, was conducting a mercantile business, and had been so engaged for some time, at Great Falls, in Chester County. The capital stock of the corporation was owned by the two plaintiffs, brothers, and the defendant, each owning one-third thereof, and holding certificates of stock to that extent, with the exception of 40 shares standing in the name of one Bankhead, but which in fact belonged to the three, not having been transferred on the books to them. The store building with the stock of goods had been destroyed by fire in January preceding, and litigation was pending between the company and the insurance companies on the policies.

In May, 1921, the plaintiffs and the defendant opened negotiations looking to a sale and transfer by the plaintiffs of their stock in the corporation to the defendant, and on May 24th the terms of the sale were verbally agreed upon. On that day the plaintiff W. B. Gladden, acting for himself and his brother, C. B. Gladden, met with the defendant Keistler in the directors' room of the bank at Great Falls. They called in two outsiders, McCrorey and Mullican, to witness the terms of their verbal agreement. The parties do not agree entirely as to the terms of the agreement. The plaintiffs assert that they agreed to sell their stock for $7,000 cash, or its equivalent, a conveyance of a half interest in certain lots at Great Falls, *and two-thirds of what might be realized from the insurance litigation.* The defendant concedes the first two items of the consideration, but denies that anything at all was agreed to in reference to the insurance. The contention of the plaintiffs was sustained by the testimony of W. B. Gladden and of McCrorey, the outsider, and by that of R. B. Caldwell, president of the Commercial Bank, as will be seen—all of whom testify positively to the item of insurance entering into the agreement. The contention of the defendant is sustained only by his flat denial;

his main defense is that the verbal agreement was merged in a written contract later, which contains no reference to the insurance.

After the verbal agreement of May 24, 1921, had been made at Great Falls, the parties by agreement met at the Commercial Bank in the City of Chester on June 3d, to consummate the trade. The stock certificates which the Gladdens proposed to transfer to Keistler were in that bank, and the meeting was held there for the purpose of having the stock transferred and the cash payment made by Keistler. Mr. Caldwell assisted them in closing the matter up. The stock certificates were transferred by the Gladdens to Keistler. He paid to the Gladdens $4,000 in cash, and gave them two notes of $1,500 each, payable respectively in 30 and 60 days. For some reason not explained the execution to the conveyance of a half-interest in the real estate was deferred. After the above matters had been concluded, C. B. Gladden left the bank; Keistler and W. B. Gladden remaining.

At this stage of the proceedings, after the stock had been transferred and delivered, the cash money paid, the notes executed and delivered, and C. B. Gladden had left the bank, this occurred (in the language of Mr. Caldwell):

"Mr. Banks Gladden, I think it was, asked me if I didn't think he ought to have some sort of a little paper, as he expressed it, *with reference to the division of those lots they had there.*"

In response to this suggestion, Mr. Caldwell went into his private office, and dictated to his stenographer the receipt, the storm center of this controversy, which is set forth in the opinion of Mr. Justice Stabler, and brought it back into the room where Keistler and W. B. Gladden were. What occurred then is best explained in the testimony of Mr. Caldwell:

"I don't recall whether up to that time anything was said about the insurance or not. *I knew about the suit they had pending for the insurance. I asked them what was to be done about the insurance.* Mr. Banks Gladden I think was the one that answered me. He said: 'If we get that, it will be in money; we have an understanding that is to be divided among us in accordance with our holdings in the Keistler Company.' *I asked them if that was to be put in this paper I had drawn.* \* \* \* I reminded them 'we are not dividing up partnership assets, but were transferring stock in a corporation,' *and asked them if I should put in the agreement with reference to the insurance.* I said I had already drawn the paper (and manifestly wished to know whether it should be redrawn and the agreement with reference to the insurance inserted). Mr. Banks Gladden said: *'Well it doesn't make any difference; we all understand one another; and we have never had any trouble; if we get that, it will be in money, and it will be divided.'* "

He testified further that Keistler was sitting on the opposite side of the table; that he laid the receipt down on the table, and asked Keistler if it was satisfactory to him. He replied that it was, and signed it. In answer to the question: "Did any of these gentlemen ever ask you to draw a contract, or did you undertake to draw a contract between them?" Mr. Caldwell replied:

"Mr. Gladden just said he wanted *some little paper with reference to this real estate,* and, when I drew this paper, I set out the facts that had been mentioned, *to show a consideration for Mr. Keistler to convey the lot.* Q. Are you positive that insurance was mentioned? A. Yes; I am positive, for I mentioned it myself. Q. Are you positive that Mr. Gladden stated they were going to divide that themselves; that was in money, *and it wasn't necessary to put it in that receipt?* A. Yes, sir. \* \* \* Q. But it was mentioned, and *Mr. Keistler didn't object? A. Yes, sir;* I men-

tioned it and asked about it, because I had set out the other things in this paper; and, *if I had thought about it before-hand, I probably would. have put it in there,* and it didn't occur to me until after I drew the paper, *and I asked about it, and that is what they told me.* * * * I don't recall a single thing Mr. Keistler said. Mr. Keistler is not a man that talks much; I don't know that he said anything; I don't recall. *I certainly understood that he accepted Mr. Gladden's statement about the insurance,* when I asked if they wanted me to put it in this paper I had drawn; that was after I had drawn the paper I asked them if they wanted it to go in there. Mr. Gladden made his statement, and Mr. Keistler sat right opposite him in the directors' room. * * * *I certainly understood he was* agreeing to what we were doing."

The evidence tending to show that the oral agreement at Great Falls included an agreement to divide the insurance money, in the event of a favorable result of the litigation with the insurance companies and the circumstances attending the execution of the receipt at the meeting in the bank at Chester, tending to show that that was a part of the oral agreement, and was by agreement omitted from the written receipt, was admitted by the presiding Judge, over the objection of the defendant that it tended to contradict, alter, or vary the terms of the written receipt.

Upon the defendant's motion for a new trial, his Honor Judge Shipp signed an order granting it, upon the ground that he had committed error in admitting the evidence referred to; that it was a violation of the so-called "parol evidence rule." The exceptions of the plaintiffs raise the single question of the correctness of that position.

To say that the evidence of what transpired at the Great Falls meeting, and what transpired at the bank meeting in Chester, *tended* to show that the item of a division of the insurance money was a part of the oral agreement, is a mild

expression of the conclusion which any unprejudiced mind would arrive at. It, at the least, was sufficient to convince the jury, which found a verdict in favor of the plaintiffs upon that issue, squarely presented to them in the Judge's charge. Unless, therefore, there was error on the part of the Circuit Judge, in the admission of this evidence, the verdict should be allowed to stand, and that is the issue presented by this appeal.

There is no question as to the *general rule* that parol evidence which tends to contradict, vary, or alter the terms of a written instrument cannot be received; but to this general rule there are many exceptions: (1) It may be received when it appears *upon the face of the writing* that it does not purport to cover all of the terms of the oral agreement; (2) it may be received when, *outside of the writing,* it is made to appear that it was not intended by the parties to cover all the terms of the oral agreement; (3) it may be received when it is made to appear that the writing was intended by the parties to cover a particular feature of the oral agreement alone, especially when this is made to appear by the specific agreement or understanding of the parties; (4) it may be received for the purpose of establishing a verbal agreement independent of the writing.

None of these exceptions will permit the admission of the parol evidence, where it appears that it will tend to contradict, vary, or alter the terms set forth in the writing.

I think that the evidence was admissible in this case upon either of the second or third exceptions above noted: (2) It may be received when, *outside of the writing,* it is made to appear that it was not intended by the parties to cover all the terms of the oral agreement; or (3) it may be received when it is made to appear that the writing was intended to cover a particular feature of the oral agreement, especially when this is made to appear by the specific agreement or understanding of the parties.

I. The facts of this case so clearly demonstrate that they tend to establish the exception last referred to, which is conclusive of the question at issue, that I will discuss it first. As a matter of course, this Court cannot decide the issue of fact thus suggested; but, upon the issue of the admissibility of the evidence, all that may be required to be shown is the *tendency* of the evidence in that direction.

The situation here is quite different from that presented by the usual circumstances attending the making of an oral agreement and the swiftly following effort of the parties to incorporate the terms of that agreement in a writing signed by both of the contracting parties. It is under these circumstances that the question ordinarily arises, as to the admission of parol evidence in reference to some of the terms of the writing, or to some element of the oral agreement which has been for some reason or other omitted from the writing.

I may be permitted to suggest with great deference and respect, what to my mind is quite apparent, that the opinion of Mr. Justice Stabler proceeds upon the theory that the ordinary situation above referred to has been presented by the facts; as if the parties, soon after the oral agreement at Great Falls had been entered into, met at the bank in Chester *for the purpose of reducing to writing the terms of that agreement,* and that the writing had been executed for that purpose. Nothing seems further from a legitimate conclusion from the facts than this.

It appears beyond doubt that the parties met at Chester for the purpose of *consummating* the oral agreement that had been entered into at Great Falls; not of memorializing in writing the terms of that agreement. The execution and delivery of the receipt occurred *after the major portion of the oral agreement had been consummated;* the certificates of stock had been transferred and delivered; the cash payment of $4,000 had been made; the two notes of $1,500 each had been executed and delivered; and one of the parties, C. B.

Gladden, satisfied with the consummation as far as it had proceeded, and leaving the matter of the execution of the deed to an interest in the real estate (admittedly a part of the oral agreement) resting in the oral agreement, had left the conference. There was no necessity or occasion, therefore, to crystalize the *entire* oral agreement in writing after so much of it had been consummated; and what followed I think conclusively shows that the sole purpose of the receipt was to secure the written acknowledgment and promise of Keistler, binding him to the single feature of the oral agreement relating to the real estate. After so much of the oral agreement, as stated, had been completed, C. B. Gladden was satisfied to leave the other two elements, the real estate and the insurance, under the oral agreement, and left. W. B. Gladden, however, suggested the execution of a memorandum *relating to the real estate solely*. Mr. Caldwell understood that a conveyance of a half interest in the lots was all that the "little paper" was intended to cover, *and the paper was drawn covering that feature alone*. If there could be the remotest doubt of that purpose in executing the paper, it is removed by the testimony of Mr. Caldwell that the agreement as to a division of the insurance money, if collected, was brought up by him; that the agreement as to the insurance was distinctly stated by Gladden in the presence of Keistler, who said not a word in opposition; that he asked if it should be incorporated in the paper; and that it was stated by Gladden, and tacitly assented to by Keistler, that it being thoroughly understood by them that the insurance money was to be divided, it was not at all necessary to redraft the paper and have the agreement as to it inserted; and, as Mr. Caldwell further testified: "I set out the facts that had been mentioned *to show a consideration for Mr. Keistler to convey the lots."* Gladden was willing, and Keistler was willing, that the matter of a division of the insurance money should continue to rest in parol, as all the

other elements of the oral agreement at Great Falls had up to that time rested; and, what makes the case for the plaintiffs absolutely impregnable, *it was agreed that that element should not be included in the writing,* completely settling the question that it was intended simply to memorialize *one single feature of the oral agreement,* the division of the lots.

I think, therefore, that it is absolutely clear that the receipt was not intended as a full memorial of the verbal agreement which was entered into on May 24th, and had been practically consummated; that it was intended only as a memorandum limited to one feature of that agreement; and that it was expressly agreed by the parties that the feature of a division of the insurance money, admitted by Keistler as a part of the verbal agreement, *need not be incorporated in the receipt.*

If that be true, there can be no question as to the admissibility of the evidence. It can be excluded only upon the theory that the written instrument in question *was intended by the parties to crystalize all of the elements of the preceding oral agreement.* How is it possible to come to this conclusion, in the face of the evidence, at least, tending to show that the parties expressly agreed and understood that the element of the oral agreement relating to the division of the insurance money should be omitted from the writing? In other words, that the writing should not memorialize all of the elements of the oral agreement.

"The rule excluding parol evidence of a consideration different from a contractual one recited in the written instrument has no application when it is evident that the instruments were executed in pursuance of a more comprehensive agreement which the parties did not undertake to express in writing." 22 C. J., 1172.

In *Stahelin v. Sowle,* 87 Mich., 124; 49 N. W., 529, it was held that, where the declarations of both parties showed

that the written contract was treated as incomplete, parol evidence is admissible of extrinsic facts or agreements.

In *Rines v. Ferrell*, 107 Minn., 251; 119 N. W., 1055, it was held that:

"* * * a written agreement given in *part performance* of an oral one, which includes the subject-matter of the written one and other matters *not intended to be embraced in the written one,* does not exclude evidence as to the oral agreement in respect to such other matters."

A decision which aptly fits the question here at issue.

"Where a writing, although embodying an agreement, is manifestly incomplete, and not intended by the parties to exhibit the whole agreement, but only to define some of its terms, the writing is conclusive as far as it goes; but such parts of the actual contract as are not embraced within its scope, may be established by parol evidence." The Alida, Fed. Cas. No. 200.

"When a written contract is confined to one undertaking by one party, although a presumption arises, in the absence of proof to the contrary, that the parties expressed the whole of their intention in respect to the subject-matter yet that presumption may be rebutted by express evidence that what was so written *was intended as a mere memorandum of one part or branch only of a mere general agreement." Lafitte v. Shawcross* (C. C.), 12 F., 519.

When parts only of a transaction in litigation between parties have been evidenced by an instrument in writing, parol evidence is admissible to prove the remainder of the transaction, in order that the Court may view the transaction from the viewpoint of the parties. *Miller v. Fichthorn*, 31 Pa., 252.

"When the writing does not purport to disclose the complete contract, or if, when read in the light of attendant facts and circumstances, *it is apparent that it contains only a part of the agreement entered into by the parties,* parol

evidence is admissible to show what the rest of the agreement was; but such parol evidence must not be inconsistent with or repugnant to the intention of the parties as shown by the written instrument." *Stone v. Spencer,* 79 Okl., 85; 191 P., 197.

"Where a written contract was made in pursuance of a prior verbal contract between the parties broader in its scope, and *as a means of carrying out a portion only of such verbal contract,* the rule that a verbal agreement is conclusively presumed to be merged in a subsequent written contract does not apply, and the verbal agreement may be shown in a suit to determine the respective rights of the parties." *National Wire Bound Co. v. Healy* (C. C. A.), 189 F., 49.

In this case the Court made the following observation quite pertinent to the case at bar:

"There is no ground, therefore, for applying the rule * * * that verbal conversations are merged in a subsequent written agreement; *for these subsequent written agreements were not accepted or acted upon* * * * . *as a written embodiment of the verbal agreement."*

"Where the parties do not intend to embody their entire oral agreement in the writing, the rule invoked by the plaintiffs does not apply." *Brosty v. Thompson,* 79 Conn., 133; 64 A., 1; 12 L. R. A. (N. S.), 793; 118 Am. St. Rep., 178.

It is a very significant fact, as bearing upon the question whether the parties intended that the receipt should memorialize all the terms of the oral agreement, that it was signed only by Keistler; a fact entirely consistent with the contention of the Gladdens that it was executed for the purpose of binding him in reference to the real estate, and for none other.

That under the evidence a jury would be justified in finding that Keistler agreed that the matter of insurance need not be incorporated in the receipt I think cannot be denied.

If he did so agree, and had Gladden to accept the receipt as it stands, it would be a monstrous fraud on his part now to insist that the agreement to divide the insurance cannot be enforced because it was not incorporated in the receipt.

"The existence of a contemporaneous parol agreement between the parties under the influence of which a note or contract has been signed, which is violated as soon as it has accomplished its purpose in securing the execution of the paper may always be shown when the enforcement of the paper is attempted. It is a plain fraud to secure the execution of an instrument by representations differing in important particulars from those contained in the paper and after the paper has been signed, attempt to compel literal compliance with its terms, regardless of the contemporaneous agreement without which it would never have been signed at all." 10 R. C. L., 340.

We have this situation: There is evidence from Gladden and McCrorey (the outsider called in to witness the oral agreement at Great Falls), and Caldwell, tending to show that the agreement did contain the stipulation that the insurance money should be divided; there is evidence from Gladden and from Caldwell tending to show that it was agreed, when the receipt was executed, that the stipulation as to insurance should be omitted from the receipt. A finding upon both of these matters in favor of the Gladdens was at least justified, if not demanded. Under these circumstances, should Keistler be permitted to repudiate both his original agreement as to the insurance and his agreement that it needed not to be incorporated in the receipt? I most assuredly do not think so.

II. There is another interesting view of this case. I will assume for the argument's sake that the theory upon which the opinion of Mr. Justice Stabler has proceeded is correct; that the issue of the admissibility of the parol evidence under

the facts of this case is the same as if the parties had met soon after the meeting at Great Falls and proceeded to formulate in writing the previous oral agreement (an hypothesis which I have endeavored to show is not at all borne out by the evidence) ; in other words, that the written instrument was executed pursuant to the prior oral agreement for the purpose of memorializing the terms of that agreement.

Assuming that to be true, the established rule is that parol evidence *outside of the writing* is admissible to show that *it was not intended* by the parties that the writing should cover *all of the terms of the oral agreement.*

It is said in the opinion of Mr. Justice Stabler:

"The authorities are divided on the question as to how the incompleteness of the written agreement may be shown; some cases holding that, in the absence of fraud or mistake, parol evidence can be admitted only when the contract or writing shows on its face that it does not express the entire agreement of the parties, and others holding that the omission of a portion of the agreement may be shown by parol. As to this point we express no opinion. \* \* \*"

From the following quotations from 22 C. J., 1283, supported by the decisions of 44 states, *including South Carolina,* there does not appear to be a very serious division as to the proposition.

In 22 C. J., 1283, it is said:

"Where a written instrument, executed pursuant to a prior verbal agreement or negotiation, does not express the entire agreement or understanding of the parties, the parol evidence rule does not apply to prevent the introduction of extrinsic evidence with reference to the matters not provided for in the writing, and under such circumstances it is not necessary that there should be any allegations of fraud, accident or mistake, in order to render parol evidence as to the real contract between the parties admissible,"

—citing in support of this proposition a myriad of cases from the Courts of United States, Alabama, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New Jersey, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin (44 states), England, and Ontario. ·

The South Carolina cases cited are: *Midland Co. v. Furman,* 111 S. C., 287; 97 S. E., 831; *Harris v. Harris,* 104 S. C., 33; 88 S. E., 276; *Midland Co. v. Pickens,* 96 S. C., 286; 80 S. E., 484; *Herlong v. Southern Co.,* 93 S. C., 529; 77 S. E., 219; *Ashe v. Carolina & N. W. R. Co.,* 65 S. C., 134; 43 S. E., 393; *Sloan v. Courtenay,* 54 S. C., 314; 32 S. E., 431; *Willis v. Hammond,* 41 S. C., 153; 19 S. E., 310; *Holly v. Blackman,* 32 S. C., 584; 10 S. E., 774; *Bulwinkle v. Cramer,* 27 S. C., 376; 3 S. E., 776; 13 Am. St. Rep., 654; *Moffatt v. Hardin,* 22 S. C., 9; *Kaphan v. Ryan,* 16 S. C., 352; *Hatcher v. Hatcher,* McMul. Eq., 311.

In reference to the cases apparently creating a division upon this question the author states:

"This discrepancy is, however, more apparent than real, and probably results more from a loose use of terms than a confusion of ideas, as both lines of cases may be reconciled with what appears to be the most satisfactory general rule that can be announced in respect to this matter; which is, that while the writing itself is the only criterion by which the intention of the parties is to be ascertained, yet it is not necessary that the incompleteness thereof should appear on its face from a mere inspection of it, for it is to be construed in the light of its subject-matter and the circumstances under

which and the purposes for which it was executed. Indeed some of the cases, which state flatly that the instrument must appear on inspection to be incomplete, contain expressions showing a recognition of the modification that the surrounding circumstances may also be considered."

Mr. Wigmore employs a term which is exceedingly expressive: The *"Integration"* of legal acts, which he defines to be "the formation from scattered parts into an integral documentary unit," and announces this proposition:

"When a legal act is reduced into a single memorial, all other utterances of the parties on that topic are legally immaterial for the purpose of determining what are the terms of the act." 4 Wig. Evd. (1st Ed.) § 2425.

It seems clear that, if a material element of a verbal agreement is omitted from a written memorial, *and particularly where it is omitted by express agreement,* the written memorial cannot be deemed the "integration" of the agreement which preceded it; the proof of this omitted element by parol, therefore, does not impinge upon the parol evidence rule.

As Mr. Wigmore says, in Section 2430:

"The most usual controversy arises in cases of *partial integration,* i. e., where a certain part of a transaction has been embodied in a single writing, but another part *has been left in some other form.* Here obviously the rule against disputing the terms of the document will be applicable to so much of the transaction as is so embodied, *but not to the remainder."*

The parties are not obliged to embody their transaction in a single document; they may do so if they choose; hence it becomes merely a question whether they have intended to do so. Section 2930. This question of intention is determined by the conduct and declarations of the parties.

As a preliminary to the application of the law, the Judge hears the evidence of the previous negotiations and the cir-

cumstances attending the execution of the written instrument. If the evidence, taken to be true, does not combat the presumption that the writing was intended to cover the entire transaction, the Judge so rules, and directs the jury to disregard it; if, on the contrary, if taken to be true, it overthrows that presumption, its truth is submitted to the determination of the jury.

As Mr. Wigmore says (Section 2430) :

"(1) Whether a particular subject of negotiation is embodied in the writing depends wholly upon the intent of the parties thereto. * * * Here the parties are not obliged to embody their transactions in a single document; yet they may if they choose. Hence it becomes merely a question whether they have intended to do so. (2) This intent must be sought where always intent must be sought; * * * namely, in the conduct and language of the parties and the surrounding circumstances. The document alone will not suffice. * * * The question being whether subjects of negotiation were intended to be covered, we must compare the writing and the negotiations before we can determine whether they were in fact covered. * * * There is a preliminary question for the Judge to decide as to the intent of the parties, and upon this he hears evidence on both sides; his decision here, *pro* or *con,* concerns merely this question preliminary to the ruling of law. If he decides that the transaction was covered by the writing, he does not decide that the excluded negotiations did not take place, but merely that if they did take place they are nevertheless legally immaterial. If he decides that the transaction was not intended to be covered by the writing, he does not decide that the negotiations did take place, but merely that if they did, they are legally effective, and he then leaves to the jury the determination of fact whether they did take place."

That is exactly the course pursued by the able and experienced Circuit Judge in this case; he allowed all of the

circumstances connected with the original verbal agreement of May 24th, and with the consummation of the trade at the bank, followed by the execution and delivery of the receipt, and submitted the truth of the disputed facts to the jury, holding that, if those facts, as contended for by the plaintiffs, were so found by the jury, the plaintiffs were entitled to recover; otherwise not. His order granting a new trial was a reversal of the proper course which he had adopted, and a holding that all of such evidence was inadmissible as violative of the parol evidence rule. I think that his holding was erroneous for two reasons: (1) The evidence was admissible upon the preliminary question for him to decide whether the evidence, if true, overthrew the presumption that the writing contained the entire contract between the parties; (2) that, as a matter of law if the evidence on behalf of the plaintiffs be true, the conclusion is irresistible that the intention of the parties was that the writing should not embody the entire terms of their previous oral agreement, but that the matter of a division of the insurance money should rest outside of the written receipt in the conscience and spirit of fair dealing of the parties, upon the previous verbal agreement.

In the case of *Moffatt v. Hardin,* 22 S. C., 9, the action was to foreclose a mortgage which had been given by a *cestui que* trust to her trustee, and assigned by him to the plaintiff. A witness was offered to prove that, at the time the beneficiary executed the bond and mortgage, the trustee, mortgagee, stated that, upon the happening of a certain contingency, he would cancel the bond and mortgage which he was taking simply for his protection. The testimony was objected to as violating the so-called parol evidence rule. The objection was not sustained; the Court holding:

"Nor do we regard this testimony as inadmissible on the ground that it tended to vary the terms of written instruments. The purpose manifestly was not to vary the terms

of the papers, *but to explain the uses to be made of them and the conditions of their existence;* as stated in the case of *Kaphan v. Ryan,* 16 S. C., 357, 'to show the whole agreement in which they originated *and of which they constituted only a part.'* It is said in 1 Greenleaf's Evidence, \* \* \* that the rule does not apply to the admission of parol evidence in cases *where the original contract was verbal and entire, and a part only was reduced to writing."*

After stating the general parol evidence rule, the Court, in *Bulwinkle v. Cramer,* 27 S. C., 376; 3 S. E., 776; 13 Am. St. Rep., 645, says:

"This seems very plain, but the application of the rule is not always free from difficulty. In the infinite combination of circumstances, cases arise, which seem exceptions, but, when clearly examined, are found not to fall within the principle. *As for example, it may happen that the written instrument does not purport to cover the whole field of contract, and is not intended to be the 'depository' of the whole agreement, but only one branch of it."*

Exactly the idea intended to be conveyed by the term used by Mr. Wigmore "the *integration* of the contract." The Court continues:

"In such case, the whole contract may be proved by parol without touching the principle, the object being not to add to or alter the written instrument, but to show the whole agreement, *of which the writing is only a part."*

"It is said in 1 Greenl. Evid. § 284a, that the rule does not apply to the admission of parol evidence 'in cases where the original contract was verbal and entire, and a part only was reduced to writing.' " *Kaphan v. Ryan,* 16 S. C., 352.

In *Willis v. Hammond,* 41 S. C., 153; 19 S. E., 310, the Court said:

"While it is a general rule that a contract in writing, complete in all its terms, draws into it all parol contracts [that is to say, I interpolate, all the elements of the parol

contract], preceding it, yet if it fails to state the considera-
tion; if it uses terms that need explanation to be understood
and applied; *or if it is only a part of a general whole, it is
perfectly competent to supply all these missing qualities by
testimony giving all the precedent agreements of the parties.*"

How is it possible to prove that the *written* contract was
"only a part of the general whole," unless one be allowed to
prove by *parol* what was the "general whole?"

In the case of *Chemical Co. v. Moore,* 61 S. C., 166; 39
S. E., 346, the parties had entered into a written contract
for the sale and purchase of a quantity of fertilizers. The
contract sued upon, for the goods sold, was admitted by
the defendants, who set up a counterclaim for damages re-
sulting from the breach of a parol agreement, entered into
simultaneously with, and as an inducement to, the execu-
tion of the written contract of sale, with the plaintiff's
agent, that the defendants should be the sole agents for the
sale of he plaintiff's goods for the year at Duncans, S. C.,
and vicinity, and that none of its goods should be sold or
shipped to any other person at that point or in the vicinity.
The defendants offered parol evidence of the alleged agree-
ment, which upon objection was excluded by the Circuit
Judge. Upon appeal the judgment in favor of the plaintiff
was reversed, the Court holding:

"The testimony ruled out was offered—not for the pur-
pose of impairing, altering or in any way, otherwise, inter-
fering, with the written contract upon which the plaintiff
based its claim—but solely for the purpose of showing that
by reason of the breach by the plaintiff of another, distinct
and independent agreement, the plaintiff had become liable
to pay the defendants the damages alleged in the answer."
(It does not appear strictly accurate to refer to the parol
agreement as an *independent* one, for the allegation was
that it was an *inducement* to the written contract.)

*In Ashe v. Carolina & N. W. R. Co.,* 65 S. C., 134; 43 S. E., 393, the Court said:

"When the written evidence of the contract does not contain all the terms of the transaction between the parties, parol evidence (not contradicting or varying the writing) is admissible for the purpose of showing a contemporaneous, independent agreement entered into between the parties."

"It is a well-established general rule that if the parties reduce their entire contract or agreement to writing, whether under seal or not, the Court will not hear parol evidence to vary or change it, unless for fraud, mistake, or the like; *but if it appears that the entire agreement was not reduced to writing,* or if the writing itself leaves it doubtful or uncertain as to what the agreement was, parol evidence is competent, not to contradict, but to show and make certain what was the real agreement of the parties; and in such a case what was meant, is for the jury, under proper instructions from the Court." *Cumming v. Barber,* 99 N. C., 332; 5 S. E., 903, reaffirmed as late as September, 1926, in the case of *Hite v. Aydlett,* 192 N. C., 166; 134 S. E., 419.

"It is not uncommon to speak of the present rule as a rule against 'varying the terms of the writing.' No doubt that is precisely the effect of applying the rule. But it can never serve as a test to determine in the first instance whether the rule is applicable. The applicability and the effect of the rule are distinct things. To employ this phrase as a test is to reason in a circle; for it is to attempt to decide whether something conceded to be different from the writing ought to be excluded by showing that it is different. All the phrases about transactions that 'vary' or 'contradict,' or are 'inconsistent,' involve the same futility. *The fundamental question is as to the intent of the parties to restrict the writing to specific elements or subjects of negotiation,* * * * and if that intent existed, then the other subjects of negotia-

tion can be established even though they be (as they always are) different from the writing." 4 Wig. Ev. § 2431.

In *Fullwood v. Blanding,* 26 S. C., 312; 2 S. E., 565, the Court said:

"It is well established, as a general rule, that parol testimony is inadmissible to contradict, vary, or alter a written instrument. * * * If so, it should have been rejected as violative of the rule suggested. If, however, its purpose was simply to explain the object and intent of the assignment, and not to contradict, alter, or vary its terms, then the rule above would not exclude it."

"Whether the written contract expresses the entire agreement of the parties," and thereby renders parol evidence of its terms inadmissible, "must be determined from the contract itself in the light of the subject-matter" and of the attending circumstances. *Meland v. Youngberg,* 124 Minn., 446; 145 N. W., 167, Ann. Cas., 1915-B, 775.

The case of *Harris v. Dinkins,* 4 Desaus. 60, is not in point. There an heir at law had given to the administrator a receipt for a small sum of money "in full for my share of the estate. * * *" Parol evidence offered to show that the parties intended "the estate" to include both real as well as personal property was excluded upon two main grounds: That the administrator had nothing to do with real estate and the presumption was that the receipt referred only to that class of property within his control; and that the sum received was entirely disproportioned to the heir's interest in the real estate.

III. Another view of the case sustains the admissibility of the evidence. The so-called receipt contains as engagement of Keistler in reference to the real estate; no other engagement by any of the parties appears in that paper. The recital portion of the receipt simply states the consideration which was intended to support the engagement of Keistler. As Mr. Caldwell testified: "I set out the facts that had been

mentioned *to show a consideration for Mr. Keistler to convey the lot";* that the matter of insurance which might have been inserted as an additional consideration and would have been "if I had thought of it beforehand," was called to their attention, when it was agreed that it need not be incorporated. The case presented then is one where a part of the consideration for the engagement of Keistler has been ·omitted *by agreement;* and the admissibility of parol evidence to establish this omitted portion of the oral agreement seems beyond question.

It seems to me that the case of *Knighton v. Desportes,* 119 S. C., 340; 112 S. E., 343, is conclusive of the question. There the plaintiff sued for the penalty under the usury statute. The defendant claimed that in the sale of a certain piece of land, although the consideration expressed in the deed was $1,000, the oral agreement which preceded the execution of the deed, contained as a further consideration for the conveyance, that the plaintiff would release his claim on account of usury. The plaintiff objected to parol evidence to establish this additional consideration upon the ground that it was violative of the parol evidence rule. The evidence was received and the defendant had judgment from which the plaintiff appealed. The Court, in an elaborate opinion by Hon. I. H. Hunt, Acting Associate Justice, concurred in by the late Chief Justice Gary, and Associate Justices Fraser and Cothran (Watts, A. J., dissenting) affirmed the rule of the Circuit Judge. The case is so full to the point that it would be a work of supererogation to quote from it or to endeavor to elaborate it. It is sufficient to state that the decision is· based upon the principle that the full consideration of a deed may be inquired into by parol evidence, *even though the additional consideration sought to be· established is contractual in its nature,* provided that there is nothing contractual in the consideration stated in the deed,

and the additional consideration does not contradict, vary, or alter the granting part of the deed.

In the particular document under review in the case at bar, it will be seen that the consideration upon which is based the defendant's agreement to convey an interest in the real estate is not at all contractual; that is, *executory,* in its nature. It contains a recital *of what had been done,* not what was to be done, as the consideration for the promise which followed it. If, instead of an agreement to make a deed for the interest in the real estate, the defendant had at the time executed and delivered a deed, and had stated in it the consideration which is recited in the paper, under the *Knighton case* there could be no doubt of the admissibility of parol evidence to establish, as an additional consideration, the oral agreement as to a division of the insurance money. Is an agreement to make a deed to possess a sacred character not accorded to a deed? I hardly think so.

I think that there is much force in the point suggested to my mind by the case of *Collins v. Tillou's Adm'r,* 26 Conn., 368; 68 Am. Dec., 398, that the language of the receipt is that of Keistler, and that the first part of it is a statement by him of the consideration for his promise in regard to the real estate; a matter that is always open to parol evidence. In that case it was held that a deed absolute in terms was open to parol evidence to show a special oral contract which was the consideration for the deed. The Court said:

"We regard parol evidence as clearly admissible to show the circumstances under which a contract was made, and the relation of the plaintiffs and defendants to it, and to each other in respect to it."

In *Clarke v. Tappin,* 32 Conn., 69, it was held that the insertion of a consideration in a deed is considered as made merely for the purpose of giving full effect to the instrument.

In *Baldwin v. Carter,* 17 Conn., 201; 42 Am. Dec., 735, it was held that parol evidence is admissible to show the situation of the parties, the object in view, and the consideration of a written contract.

In *Hall v. Solomon,* 61 Conn., 476; 23 A., 876; 29 Am. St. Rep., 218, it is said:

"It will be remembered that it is not the office of a deed to express the terms of the contract of sale, but to pass the title pursuant to the contract. Therefore, a parol agreement, being a part of the consideration for the sale, restricting the use of the premises in one particular, for a limited period, is not merged in the deed, and does not qualify or in any way effect the title to the land; and the admission of parol evidence to prove such an agreement is no infringement of the rule that parol evidence is not admissible to contradict, vary, or explain a written instrument."

Paraphrasing this statement: Therefore, a parol agreement, being a part of the consideration of an agreement to make a deed, is not merged in the deed, and does not qualify, or in any way affect, the agreement to make the deed, and the admission of parol evidence to prove such an agreement, is no infringement of the rule that parol evidence is not admissible to contradict, vary, or explain a written instrument.

In 10 R. C. L., 1044, it is said:

"The rule permitting the true consideration of written contracts to be enquired into by parol evidence, does not apply where the statement *in the contract* as to the consideration, is more than a mere recital or acknowledgment of payment, and is of a *contractual* nature. If the consideration is expressed merely *as a recital of a precedent or contemporaneous fact,* parol evidence is receivable to prove that the recited fact is untrue, and that the recited consideration has not been paid at all, or has been paid on a different account; but if the instrument states a contractual considera-

tion, parol evidence is not admissible to vary or contradict the consideration expressed."

"Parol evidence is not admissible to show what was the consideration of a contract and the understanding of the parties thereto, if the object of such evidence is to contradict a written obligation, and to give it an effect inconsistent with its terms." *Sandage v. Studabaker,* 142 Ind., 148.; 41 N. E., 380; 34 L. R. A., 363; 51 Am. St. Rep., 165.

It manifestly is not intended by the parol evidence in question to contradict the written obligation of Keistler to execute the deed or have it executed.

It is insisted, however, that the recital in the receipt is not a *mere recital,* but is *contractual in its nature,* and that on that account parol evidence was inadmissible. The only part of it which has the semblance of contractuality is the statement, as a part of Keistler's engagement under the oral contract to make a deed to the real estate. It is strange to hold that tha was contractual *in the recital* when it was followed by his express engagement. The latter would have been unecessary if the former had been contractual. But, assume that it was contractual, it is not proposed by the evidence to alter or contradict that engagement. There appears to be no sound reason why the statement of one contractual element in the consideration may not be supplemented by another which does not purport in the slightest degree to contradict, vary, or alter the contractual element which appears in the writing.

In the case of *In re Cridge's Estate,* 289 Pa., 331; 137 A., 455, decided *April 11, 1927,* the Court said:

"It is urged that there is a legal bar to a recovery in the present case, since the promise to limit payments to the lifetime of Cridge is a contradiction of the written agreement, which alone controls, since it is the expression of the final result of the negotiations of the parties and the best evidence of the transaction. It has long been held in Pennsylvania

that parol evidence, if sufficient, may be used to show fraud, accident, or mistake in the making of a contract, or a failure of consideration (*Murray v. Flesher,* 88 Pa. Super. Ct., 592), and may be offered to show a contemporaneous parol agreement which induced the signing (*Neville v. Kretzschmar,* 271 Pa., 222; 114 A., 625; *Danish Products Co. v. Marcus,* 272 Pa., 340; 116 A., 303). The rule has been generally recognized that the agreement set up must not be inconsistent with the express provisions of the writing. *Stull v. Thompson,* 154 Pa., 43; 25 A., 890. And the more recent decisions have enforced even more strictly this principle, holding that if the matter proposed to be shown by parol is the subject of a covenant in the agreement, which is complete, such evidence to alter the terms cannot be received, and we have no intention of weakening the position taken in *Gianni v. Russell,* 281 Pa., 320; 126 A., 791, and *Murphy v. Pinney,* 86 Pa. Super. Ct., 458.

"A distinction has, however, been drawn in the decisions, where the effort is made to show by parol the true purchase price.

" 'The amount of the consideration in a contract, whether large or small, does not usually affect the covenants of the parties, and therefore the fact that there was some other or different consideration than that expressed in the writing may be orally shown, the consideration mentioned being held only presumptive evidence that it is the real one.' Henry on Trial Ev., 383.

"Thus it has been held permissible to prove that the sum named was more than that stipulated for in the deed, and that additional amounts were to be paid (*Piper v. Queeney,* 282 Pa., 135; 127 A., 474; *Croyle v. Cambria L. & I. Co.,* 233 Pa., 310; 82 A., 360; *Potter v. Grimm.,* 248 Pa., 440; 94 A., 185; 12 A. L. R., 349; *Faux v. Fitler,* 223 Pa., 568; 72 A., 891; 132 Am. St. Rep., 742; *Henry v. Zurflieh,* 203 Pa., 440; 53 A., 243; *Patterson's Estate,* 86 Pa. Super. Ct.

299), that other obligations not named have been assumed (Buckley's Appeal, 48 Pa., 491; 88 Am. Dec. 468), or that there was no money consideration, though one is named, the transaction constituting a mere gift (Audenreid's Appeal, 89 Pa., 114; 33 Am. Rep., 731; *Lewis v. Brewster,* 57 Pa. 410), or that there was a limitation on seeming liability. *Humbert v. Meyers,* 279 Pa., 171; 123 A., 733.

"In discussing this question in an early case, subsequently cited with approval, it was said:

" 'It is plain from all the cases on this point, that any discrepancy which may appear to exist in the decision of them arose entirely from a difference of opinion among Judges as to what was, or [what] was not inconsistent with the terms of the deed; some Judges thinking that the insertion of any particular consideration in a deed, without more, expressly negatived the fact of its being founded upon any other or greater consideration; while others, conceiving that, as the law did not always require the true or the whole of the true consideration to be inserted in order to give the deed validity, and that therefore it frequently happened that but little regard was paid by the parties to the consideration set forth in the deed, whether it was the whole consideration or not, leaving it perhaps to the scrivener to put in such of it as in law he might deem sufficient to make the deed operative, thought it unreasonable to make the consideration so introduced into the deed conclusive upon the parties, so as to preclude them from showing the true, or the whole consideration whenever the ends of justice might seem to require it. The considerations being thus inserted, rather to meet the exigency of the law than the whole truth of the case, it was held not to be inconsistent with the intention of the parties, which ought always to give force and meaning to the terms of the deed, to admit parol evidence to show what the true consideration of it was.' *Jack v. Dougherty,* 3 Watts, 152, 158."

In *Williams v. Pittsfield Co.* (Mass.), 154 N. E., 572, decided January 3, 1927, the Court said:

"It is permissible to show by oral testimony that a memorandum of agreement does not contain all the stipulations made by the parties in the oral contract. * * * It frequently has been held that an independent and collateral element of a contract may be shown by parol evidence, even though the rest of the contract is in writing."

See, also, upon this point the numerous cases, particularly those from this State, referred to in the *Knighton case.*